No. 23-8054

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

Jake Stanley DeWilde

*Plaintiff - Appellant,*

v.

Attorney General of the United States; Director of the
Bureau of Alcohol, Tobacco, Firearms, and Explosives,

*Defendants - Appellees.*

---

On Appeal from the United States District Court for the District of Wyoming
The Honorable Chief Judge Scott W. Skavdahl
No. 1:23-cv-00003-SWS

---

**APPELLANT'S OPENING BRIEF**

---

ORAL ARGUMENT IS NOT REQUESTED.

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES ................................................................................. iii

GLOSSARY.......................................................................................................... viii

JURISDICTION.......................................................................................................1

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE.................................................................................1

SUMMARY OF THE ARGUMENT .......................................................................2

ARGUMENT ...........................................................................................................4

     I.    Mr. DeWilde has Standing to Facially Challenge 18 U.S.C. § 922(o) ......4

          A. *Standard of Review* ........................................................................4

          B. *Mr. DeWilde has Suffered an Injury in Fact*...................................4

     II.   Section 922(o) does Not Comport with the Second Amendment ............11

          A. *Standard of Review* ......................................................................11

          B. *The Plain Text of the Second Amendment, as Informed by History,*
             *Protects the Possession of a Machinegun*......................................11

          C. *The Machinegun Ban is Not Consistent with This Nation's*
             *Historical Traditions of Regulating Arms*.....................................22

CONCLUSION.......................................................................................................23

CERTIFICATE OF COMPLIANCE......................................................................24

CERTIFICATE OF SERVICE ..................................................................................25

DISTRICT COURT ORDER GRANTING DEFENDANTS' MOTION TO

      DISMISS THE AMENDED COMPLAINT ..................... ATTACHMENT 1

DISTRICT COURT JUDGMENT IN A CIVIL ACTION .......... ATTACHMENT 2

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Americold Realty Tr. V. ConAgra Foods, Inc.*, 577 U.S. 378 (2016).......................6

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979)..................................................7, 11

*Barnett v. Raoul*, No. 3:23-cv-00209-SPM (S.D. Ill. Apr. 28, 2023).....................10

*Caetano* v. *Massachusetts,* 577 U.S. 411 (2016)......................................................19

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ......................................passim

*Fraser v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 3:22-cv-410

    (E.D. Va., May 10, 2023) ............................................................................9, 20

*Gagan v. Norton*, 35 F.3d 1473 (10th Cir. 1994) ..................................................4, 7

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) ......................................................5, 6

*Jackson v. City & Cnty. Of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ................9

*Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976)....................................................4, 7

*Mo's Express, LLC v. Sopkin*, 441 F.3d 1229 (10th Cir. 2006).................................4

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*

    *Explosives*, 700 F.3d 185 (5th Cir. 2012) .........................................................9

*New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. ___ (2022) .......passim

*Range v. Attorney General*, No. 21-2835 (3rd Cir. Jun. 6, 2023)..............................20

*Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 6:20-cv-01438

    (W.D. La. Dec. 21, 2022) .............................................................................10

*Rocky Mountain Gun Owners v. Polis*, No. 23-1251 (10th Cir. 2023)....... viii, 10, 11

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE (W.D. Wash. Oct. 24, 2022)........10

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).......................................11

*Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062 (10th Cir. 2022) .........11

*Teter v. Lopez*, No. 20-15948 (9th Cir. Aug. 7, 2023)....................................9, 17, 18

*Tyler v. Hillsdale County Sheriff's Dept.,* 837 F.3d 678 (6th Cir. 2016) .................20

*United States v. Daniels*, No. 22-60596 (5th Cir. Aug. 9, 2023).............................20

*United States v. Harrison*, No. CR-22-00328-PRW (W.D. Okla. Feb. 3, 2023) ....20

*United States v. Miller,* 307 U.S. 174 (1939) ...............................................14, 18, 19

*United States v. Price*, No. 2:22-cr-00097 (S.D. W. VA. Oct 12, 2022) ................21

*United States v. Quiroz*, No. PE:22-cr-00104-DC (W.D. Tex. Sep 19, 2022)........21

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) .............................................21

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010)..........................................22

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II ..................................................................................11, 12

## STATUTES

18 U.S.C. § 922(b)(1), (c) .............................................................................20

18 U.S.C. § 922(g) .........................................................................................8

18 U.S.C. § 922(g)(1)......................................................................................20

18 U.S.C. § 922(g)(3)......................................................................................20

18 U.S.C. § 922(g)(4)......................................................................................20

18 U.S.C. § 922(g)(8)......................................................................................21

18 U.S.C. § 922(k) ..........................................................................................21

18 U.S.C. § 922(n) ..........................................................................................21

18 U.S.C. § 922(o) ............................................................................1, 4, 5, 6, 8, 11

26 U.S.C. § 5845 ............................................................................................13

28 U.S.C. § 1291 ..............................................................................................1

28 U.S.C. § 1331 ..............................................................................................1

28 U.S.C. § 1343 ..............................................................................................1

28 U.S.C. § 1346 .................................................................................................1

28 U.S.C. § 1654 .............................................................................................2, 9

## **RULES**

Fed. R. App. P. 27(d)(2)(A) ..............................................................................24

Fed. R. App. P. 32(a)(5) ...................................................................................24

Fed. R. App. P. 32(a)(6) ...................................................................................24

Fed. R. App. P. 32(f) .........................................................................................24

## **OTHER AUTHORITIES**

S.B. 23-169, 1st Reg. Sess., 74th Colo. Gen. Assemb. ....................................10

J. Pomeroy, An Introduction to the Constitutional Law of the United States (1868)

........................................................................................................................15

## <u>STATEMENT OF PRIOR OR RELATED APPEALS</u>

On August 11, 2023, a notice of appeal was filed in a civil action in the United States District Court for the District of Colorado, *Rocky Mountain Gun Owners v. Polis*, Case No. 1:23-cv-01077-PAB-NRN, and was docketed as Appellate Case No. 23-1251 in this Court. The issue of the injury-in-fact requirement for the purpose of Article III standing in *Rocky Mountain Gun Owners* is related or similar to the first issue present in the instant case.

## **GLOSSARY**

BATFE ................................ Bureau of Alcohol, Tobacco, Firearms, and Explosives

NFA .............................................................. National Firearms Act of 1934

GCA ..................................................................... Gun Control Act of 1968

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1346.

## STATEMENT OF THE ISSUES

**I.     Whether the District Court Erred in Finding that Mr. DeWilde Did Not Have Standing to Facially Challenge 18 U.S.C. § 922(o).**

**II.     Whether the District Court's Constitutional Analysis of 18 U.S.C. § 922(o) Comports with *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. ___ (2022).**

## STATEMENT OF THE CASE

Plaintiff-Appellant Jake Stanley DeWilde ("DeWilde") filed a complaint in the United States District Court for the District of Wyoming, alleging that 18 U.S.C. § 922(o) ("the machinegun ban") violates his Second Amendment rights and is unconstitutional.[1] Defendants-Appellees Attorney General of the United States and Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (collectively, "the government") moved to dismiss DeWilde's complaint. ROA, Vol. I, at 23.

---

[1] Mr. DeWilde cites here to Vol. I, p. 5 of the Record on Appeal (Doc. No. 010110898895). He cites to the record volume and page number of documents in the Record on Appeal (e.g., ROA, Vol. I, at 5) that are not attached to this brief.

DeWilde amended his complaint. *Id*. at 73. The Government moved to dismiss DeWilde's amended complaint. *Id*. at 82. DeWilde moved for summary judgment. *Id*. at 115.

The district court granted the government's motion to dismiss, denied DeWilde's motion for summary judgment, and entered final judgment in favor of the government, att. 1, 2, finding that [1] the court lacked subject matter jurisdiction, and [2] that DeWilde failed to state a claim. DeWilde timely filed a notice of appeal, ROA, Vol. I, at 298, and this appeal followed.

## SUMMARY OF THE ARGUMENT

The district court improperly concluded that because Mr. DeWilde's trust was the applicant in his Form 1 submission, his claim did not demonstrate an "injury-in-fact and confer standing." Att. 1 at 8. The court erred in this conclusion for three reasons. First, by treating DeWilde's trust as an entity distinct and independent of DeWilde, the court misunderstood the relationship between DeWilde and his trust in the context of the Gun Control Act, as well as the indiscriminate requirements that are imposed on DeWilde regardless of whether he submitted his application as an individual or as a trustee. Second, the court's conclusion violates Mr. DeWilde's right to plead and conduct his case personally, *see* 28 U.S.C. § 1654. Third, Mr. DeWilde's allegations are virtually identical to similarly-situated persons in several

other cases, including one case on appeal to this Court, where courts found that individuals had sufficiently established an injury-in-fact for the purpose of standing.

When the district court considered Mr. DeWilde's Second Amendment claim, the constitutional analysis did not comport with *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. ___ (2022). The Supreme Court has clearly identified the standards for evaluating Second Amendment challenges: "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, slip op. at 15. Thus, there are two prongs to be evaluated. First, it is determined if the conduct falls within the plain text of the Second Amendment. Second, if the conduct is within that purview, the government must provide historical analogues to justify the challenged regulation. The district court erred by conflating both prongs.

At the first prong, the district court improperly classified machineguns as dangerous and unusual by referencing pre-*Bruen* decisions and historical authorities. This approach directly contradicts the holdings in *Bruen*, which identifies the evaluation at the first prong to be a strictly textual analysis. After the district court conflated the two prongs, the court failed to perform the analogical reasoning that must be conducted at the second prong comparing the "how" and "why" of the

modern regulation to the historical regulations. Because the district court failed to perform the constitutional analysis required under *Bruen*, this Court should reverse its order and judgment.

## ARGUMENT

## I.     Mr. DeWilde has Standing to Facially Challenge § 922(o)

A.     *Standard of Review*

This Court reviews *de novo* the dismissal of a complaint for lack of jurisdiction. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006).

B.     *Mr. DeWilde has Suffered an Injury in Fact.*

When a "plaintiff is proceeding pro se, [the court] must construe his pleadings liberally." *Gagan v. Norton*, 35 F.3d 1473, 1474 n.1 (10th Cir. 1994). "The factual allegations of the complaint must be taken as true and all reasonable inferences from them must be indulged in favor of the complainant." *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976). Mr. DeWilde desires to own an M-16 machinegun for all lawful purposes; to that end, he submitted an application to the government requesting approval to make an M-16. *See* ROA, Vol. I, at 79 (DeWilde's Amended Complaint). The government disapproved DeWilde's application, solely citing 18 U.S.C. § 922(o) as the reason for disapproval. *Id*. Thus, but for the machinegun ban, DeWilde's application would have been approved, and he would make an M-16.

While the district court pledged "not [to] construct a claim or standing on Mr. DeWilde's behalf," att. 1 at 7, the court improperly dismissed DeWilde's amended complaint for an issue "not raised by Defendants," *id*. at 5, in DeWilde's "facial challenge to § 922(o)." *Id*. at 9. The court described how, in DeWilde's Form 1 application to make an M-16, "the applicant was a trust or legal entity named 'DeWilde Arms Trust,' and the Form was signed and submitted to BATFE by 'Jake DeWilde, *Trustee*.'" Att. 1 at 6 (citing ROA, Vol. I, at 15-16) (emphasis in original). Hence, the court concluded that "[t]he Plaintiff here is Jake Stanley DeWilde as an individual," "the allegations do not indicate the individually-named Plaintiff, Mr. DeWilde, has ever submitted or been denied any request by the BATFE," att. 1 at 6, and that DeWilde's "claim is too attenuated… to constitute an injury-in-fact and confer standing." *Id*. at 8. This conclusion misunderstands the fundamental relationship between DeWilde and his trust, as well as the absolute powers he possesses in the administration of his trust. It further suggests that the requirements of the National Firearms Act and the Gun Control Act apply differently to him individually than as a trustee. They do not.

*Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) is instructive here. The Fifth Circuit rejected the conclusion that an individual acting as a trustee was somehow separated from the actions of his trust in the context of the Gun Control Act; "[t]his argument strains common sense and misunderstands trust law. Historically, 'a trust

was not considered a distinct legal entity[;]' it was 'a "fiduciary relationship" between multiple people.'" *Id*. at 443 (citing *Americold Realty Tr. V. ConAgra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016). As the sole trustee, DeWilde has full control over the actions and possessions of his trust, and it would be *impossible* for his trust to "submit[] or be[] denied any request by the BATFE," ROA, Vol. I, at 6, on its own. In the instant case, DeWilde has submitted an application to make an M-16 on behalf of his trust in the same manner that Mr. Hollis submitted his application in *Hollis*. "Thus, [DeWilde], a person, would in fact possess the machinegun even if he is a trustee… [DeWilde] is subject to Section 922(o)'s ban on possessing a machinegun." *Id*.

Further, when submitting an ATF Form 1 application on behalf of a trust, the BATFE requires the trustee to complete and submit in conjunction with the Form 1 an ATF Form 5320.23, National Firearms Act (NFA) Responsible Person Questionnaire, ROA, Vol. I, at 20, ¶ 2 (§ 2(d.)(5) in original), which imposes all of the same requirements that an individual applicant would be subject to, including fingerprint submission, photograph submission, chief law enforcement officer notification, and a background check. *Id*. at 19 (§ 2 in original) (identifying the requirements for the "Preparation of Application,"). In essence, the difference between DeWilde submitting a Form 1 application individually or as a trustee simply alters the manner in which DeWilde may affect the disposition of his eventually-

registered weapon, notably in his incapacitation or death. The actual procedural requirements; the manufacturing actions he may lawfully perform; and the restrictions and prohibitions (e.g., the challenged statute) imposed on DeWilde when submitting a Form 1 Application are all essentially identical whether he submitted his application as an individual or as a trustee.

In Mr. DeWilde's amended complaint, he did not "merely express[] a desire to own an M16 machinegun" as the district court determined. Att. 1 at 7, ¶ 2. Mr. DeWilde alleged and provided evidence that he *submitted an application* "to the BATFE, requesting permission to make an M16 machinegun." ROA, Vol. I, at 65. His application submission included fingerprints for a background check, a facial photograph, and a remittance of two-hundred-dollars for an NFA tax stamp. To say that the submission of his application "does not plead any facts regarding when or how he plans to own such a gun," att. 1 at 7, does not "construe his pleadings liberally," *Gagan*, 35 F.3d at 1474, n.1, nor were "all reasonable inferences from them… indulged in favor of the complainant." *Mitchell v. King*, 537 F.2d 385, 387 (10th Cir. 1976).

DeWilde's application to "Make and Register a Firearm" unquestionably demonstrates "how he plans to own such a gun," att. 1 at 7, and "allege[s] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," *Babbitt v. Farm Workers*, 442 U.S. 289, 298

7

(1979). Indeed, the *only* way for Mr. DeWilde to lawfully make a machinegun is by submitting an application in compliance with the NFA and GCA and receiving approval by the government to do so. [2]

The court's determination is even more troubling when considering the context of the district court proceedings. DeWilde initially submitted his complaint individually *and* as trustee of the DeWilde Arms Trust. *See* ROA, Vol. I, at 5. "[I]n response to arguments concerning Mr. DeWilde's authority to represent the Trust raised in Defendants' initial motion to dismiss, Mr. DeWilde withdrew the claims on behalf of the Trust." Att. 1 at 6, n.5 (internal citations omitted) (referring to

---

[2] The district court was wrong when it "note[d] [the government's] argument that [Mr. DeWilde] has not alleged or offered any evidence that he is not prohibited from possessing… a machinegun." Att. 1 at 8, n.6. Mr. DeWilde provided evidence that he legally possesses a machinegun. *See* ROA, Vol. I, at 280 (ATF "Form 4" application to transfer and register a machinegun to DeWilde Arms Trust *approved* by the government). Neither the district court nor the government acknowledged the existence of the approved Form 4, much less disputed that the approved Form 4 is evidence that Mr. DeWilde may lawfully possess a machinegun. Nor could they; violations of 18 U.S.C. § 922(g) are *the government's* burden to prove when persons submit NFA applications. Mr. DeWilde's Form 4 to lawfully receive a machinegun was approved because he is not prohibited from possessing a machinegun. Mr. DeWilde's Form 1 was disapproved for *one* sole reason: "Prohibited from possession of a firearm under 18 U.S.C. 922(o)." ROA, Vol. I, at 22 (Form 1 "*Reasons* For Disapproval" (emphasis added)). In addition to the district court failing to acknowledge Mr. DeWilde's evidence that he is not prohibited from possessing a machinegun, the court was wrong for requiring such a showing *at all*; no such requirement exists when applying to transfer or make NFA firearms, and neither the court nor the government provided *any* evidence that such a requirement exists.

identification by the government of prohibitions of non-attorneys from representing a trust). Thus, if DeWilde did not have standing to bring this challenge individually, he would have *no legal recourse for any matter* pertaining to his trust without legal representation. Such a conclusion is at odds with federal law protecting the right of DeWilde to plead and conduct his case personally, *see* 28 U.S.C. § 1654, and is especially precarious in the context of constitutional rights involving protected arms affected by the trust.

Mr. DeWilde's desire to make and own an M-16, and his submission of an application requesting approval to act on that desire, is nearly identical to allegations from similarly-situated people in other cases where courts found that the injury-in-fact requirements were met for the purpose of standing. *See Teter v. Lopez*, No. 20-15948 (9th Cir. Aug. 7, 2023) (plaintiffs' intent to purchase butterfly knives if not prohibited from doing so constituted an injury in fact); *Fraser v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 3:22-cv-410 at 6-7 (E.D. Va., May 10, 2023) (plaintiffs had suffered an injury-in-fact because they "wish to, but are prohibited from, purchasing handguns"); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191-192 (5th Cir. 2012) ("concrete, particularized injury" was established because persons were prohibited from purchasing handguns); *Jackson v. City & Cnty. Of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (challenged statute "constitute[d] an injury in fact" because plaintiff

would purchase hollow-point ammunition but for the prohibition); *Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE (W.D. Wash. Oct. 24, 2022) (plaintiff had standing because she desired to purchase the prohibited arms); *Barnett v. Raoul*, No. 3:23-cv-00209-SPM at 10 (S.D. Ill. Apr. 28, 2023) (plaintiffs had standing because they "would like to purchase" the banned arms); and *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 6:20-cv-01438 (W.D. La. Dec. 21, 2022) (plaintiffs had standing because they would purchase handguns, but for the challenged laws).

Finally, in a recent case on appeal to this Court, The United States District Court for the District of Colorado found that the individual plaintiffs had standing to challenge the constitutionality of S.B. 23-169 (Colorado legislation raising the minimum age to purchase a firearm from 18 to 21) and satisfied Article III injury requirements because they "desire to purchase firearms for lawful purposes." *See* Appellees' Response in Opposition to Governor Polis's Motion for Stay Pending Appeal, *Rocky Mountain Gun Owners v. Polis*, No. 23-1251, Doc. No. 010110908055 at 3 (10th Cir. Aug. 24, 2023); *see also* Order, *Rocky Mountain Gun Owners v. Polis*, No. 23-1251, Doc. No. 010110910562 (10th Cir. Aug. 29, 2023) (this Court denying Governor Polis's Emergency Motion to Stay the District Court's Preliminary Injunction Pending Appeal).

The *desire* of the plaintiffs in *Rocky Mountain Gun Owners* to purchase firearms for lawful purposes "satisfie[d] the injury-in-fact requirement" because "[they] allege[d] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979). Those alleged intentions demonstrated much less than Mr. DeWilde demonstrated when he alleged that he *acted* on his *desire* to own an M-16 by formally applying to the government, in full compliance with the NFA and GCA, to make a firearm for "all lawful purposes." ROA, Vol. I, at 15.

## II.        Section 922(o) is Inconsistent with the Second Amendment

A.        *Standard of Review*

This Court reviews *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1066 (10th Cir. 2022).

B.        *The Plain Text of the Second Amendment, as Informed by History, Protects the Possession of a Machinegun*

The Second Amendment commands:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

In 2008, the Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) defined the standard of review for Second Amendment challenges. However, for fourteen years, courts misapplied the holdings in *Heller*. Consequently, the Supreme Court in *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. ___ (2022) clarified *Heller*'s holdings:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, slip op. at 15 (internal citations omitted).

Acknowledging this "two-prong" approach, the district court correctly identified the question to be answered at the first prong of *Bruen*: "whether the Second Amendment's plain text covers Mr. DeWilde's possession of machineguns." Att. 1 at 10. However, this was the beginning and the end of the court's compliance with *Bruen*. The court improperly proceeded to reference historical *authorities*; pre-*Heller* decisions; pre-*Bruen* post-*Heller* decisions; and the *Heller* decision itself in an attempt to classify machineguns as "dangerous and unusual" and unprotected.

The analysis at *Bruen*'s first prong should be "informed by history." *Bruen*, slip op. at 10. But the analysis required at *Bruen*'s first prong is a strictly "'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language." *Id*. at 10-11 (quoting *Heller*, 554 U.S. at 576-577, 578). It is the *second* prong where "the government must demonstrate that the regulation is consistent with this Nation's historical *tradition* of firearm regulation," *id*. at 8 (emphasis added), e.g., the "historical *tradition* of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (emphasis added). Thus, both prongs invoke historical analysis, but consideration and analogical reasoning of historical *authorities* and *traditions* is only performed at the *second* prong. The district court erred when it conflated both prongs.

The district court should have determined that, at the first prong, machineguns are protected arms as the term is understood in the plain text of the Second Amendment. A machinegun is defined as a firearm. *See* 26 U.S.C. § 5845. *Heller* determined that "all firearms constitute[] 'arms.'" *Heller*, 554 U.S. at 581. Finally, *Heller* held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Id*. at 582. Therefore, the "Constitution presumptively protects" the possession of machineguns under the "plain text" of the Second Amendment, *Bruen*, slip op. at 8; the analysis at *Bruen*'s first prong is satisfied; and the analysis at the second prong *must* be conducted.

While *Heller*'s analysis of the plain text of the Second Amendment demonstrates that machineguns are protected arms under the first prong of *Bruen*, the district court also failed to properly consider the understanding of the plain text of the Second Amendment at the time of its ratification. The Founders and militiamen used standardized service weapons to secure our independence during the American Revolution. "[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Heller,* 554 U.S. at 624 (citing *Miller*, 307 U.S. at 179). Thus, when the Founders wrote the Second Amendment, *arms* was undoubtedly understood to refer to standardized service weapons that were most suitable in militia and military service. This supports the purpose of the prefatory clause, which is "to preserve the militia[.]" *Heller*, 554 U.S. at 624.

The district court misread the plain text of the Second Amendment when it said that the operative phrase "'keep and bear arms'… is unconcerned with service in the militia." Att. 1 at 12 (rejecting DeWilde's argument that machineguns are protected because they are used by the military). The Supreme Court has succinctly rejected the district court's conclusion:

> Logic demands that there be a link between the stated purpose and the command. The Second Amendment would be nonsensical if it read, "A well regulated Militia, being necessary to the security of a free State, the right of the people to petition for redress of grievances shall not be infringed."

*Heller*, 554 U.S. at 577.

*Heller* determined that the prefatory clause of the Second Amendment "does not limit or expand the scope of the operative clause," *id*. at 578, nor does it "suggest that preserving the militia was the only reason Americans valued the ancient right." *Id*. at 599. Nonetheless, *Heller* determined that the prefatory clause "fits perfectly" with the right to keep and bear arms, "once one knows the history that the founding generation knew[.]" *Id*. at 598.

> That history showed that the way tyrants had eliminated a militia consisting of all the able-bodied men was not by banning the militia but simply by taking away the people's arms, enabling a select militia or standing army to suppress political opponents.

*Id*. To drive home the relationship between the prefatory and operative clauses, and to elaborate on the purpose of the prefatory clause, the *Heller* Court continued to reference many historical sources that all recognized the same core ideals:

> But a *militia* would be useless unless the citizens were enabled to exercise themselves in the use of *warlike weapons*. To preserve this privilege, and to secure to the people the ability to oppose themselves in military force against the usurpations of government, as well as against enemies from without, that government is forbidden by any law or proceeding to invade or destroy the right to *keep and bear arms*.

*Heller*, 554 U.S. at 618 (citing J. Pomeroy, An Introduction to the Constitutional Law of the United States § 239, pp. 152–153 (1868)) (emphasis added).

The district court was wrong when it said that "'keep and bear arms'… is unconcerned with service in the militia." Att. 1 at 12. As the Supreme Court has comprehensively explained, the militia is "the purpose for which the right [to keep and bear arms] was codified." *Heller*, 554 U.S. at 599.

Further refusing DeWilde's argument that machineguns are protected because they are the standard-issue service weapon in the United States military, the court stated that "taking Plaintiff's argument logically would demand that the entire law-abiding citizenry is permitted to possess the same weapons our armed forces utilize. Where is the limit? Tanks, bombs, nuclear weapons?" Att. 1 at 12. While tanks and bombs *are* possessed by law-abiding citizens outside of military service, the court's incredulity of the notion of such weapons being possessed by the citizenry underscores the lack of historical analysis performed by the court; indeed, at the time of the founding, the weapons of war possessed by the citizenry included explosives, cannons, and warships. But tanks, bombs, and nuclear weapons are not at issue in the instant case, and DeWilde identified a limit that the district court refused to acknowledge: "the Second Amendment extends, prima facie, to all instruments that constitute *bearable* arms." *Heller*, 554 U.S. at 582 (emphasis added). An M-16 is unquestionably a bearable arm; a nuclear weapon is not.

Continuing what should have been a textual analysis, the district court improperly classified machineguns as dangerous and unusual weapons at the first

prong of *Bruen*. The court acknowledged that "[t]he parties debate whether the question of 'dangerous and unusual' and the 'common use' test comes into play in *Bruen*'s first or second step." Att. 1 at 14. But there should be no debate, because this question was answered in *Bruen*. The Supreme Court considered the dangerous and unusual authorities to be historical regulations, and accordingly, the Court analyzed the authorities in the context of analogical reasoning at the *second prong*. *See Bruen*, slip op. at 37-39.

The correct analysis of the dangerous and unusual authorities was perfectly exemplified in a recent post-*Bruen* case, where the Ninth Circuit Court of Appeals determined that *Heller*'s dangerous and unusual authorities were only applicable at *Bruen*'s *second* prong. In overturning a state ban on the possession of butterfly knives, the court wrote:

> [W]e similarly reject Hawaii's argument that the purported "dangerous and unusual" nature of butterfly knives means that they are not "arms" as that term is used in the Second Amendment. *Heller* itself stated that the relevance of a weapon's dangerous and unusual character lies in the "*historical tradition* of prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 627 (emphasis added) (cleaned up). It did not say that dangerous and unusual weapons are not *arms*. Thus, whether butterfly knives are "dangerous and unusual" is a contention as to which Hawaii bears the burden of proof in the second prong of the *Bruen* analysis.

*Teter v. Lopez*, No. 20-15948, slip op. at 20-21 (9th Cir. Aug. 7, 2023).

The question in *Teter*, whether a *total ban* on the possession of an arm is constitutional, is the *same* question present in the instant case, and the analysis performed by the Ninth Circuit is particularly instructive as to how the dangerous and unusual authorities should be analyzed in the instant case.

The district court relied on *Bruen*'s assertion that "its recent holding is 'in keeping with *Heller*,'" att. 1 at 14 (citing *Bruen*, slip op. at 8), but *Heller* did not perform analogical reasoning of the dangerous and unusual authorities. Among the holdings that were clarified in *Bruen*, the Court demonstrated how to analogize the dangerous and unusual authorities at the second prong of the required analysis, and the district court failed to follow *Bruen*'s clarification.

The district court should have also found that machineguns were protected because they are in common use in the military and in the citizenry. While *Miller* determined that "ordinary military equipment" is protected, *see Heller*, 554 U.S. at 624, and *Heller* narrowed that historical scope to arms "in common use at the time," *id*., and "all instruments that constitute bearable arms," *id*. at 582, *Heller* also determined that arms in common use amongst the citizenry are unquestionably protected. *See Heller*, 554 U.S. at 629 ("Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid.")

While the Supreme Court has not identified what statistic constitutes the threshold for arms in common use amongst the citizenry, the Court unanimously held that stun guns were protected arms due to their being in common use, *see Caetano v. Massachusetts,* 577 U.S. 411 (2016) (*per curiam*), and Justice Alito's concurring opinion acknowledged that 200,000 stun guns possessed amongst the citizenry classified them as "widely owned." *See id*. at 419-420 (Alito, J., concurring). Because Plaintiff provided evidence of 175,977 machineguns being possessed by the citizenry, ROA, Vol. I, at 167, the district court should have easily found that machineguns were in common use in the citizenry, and thus are protected arms, and the district court erred by failing to consider this evidence.

Further deviating from the plain-text analysis required at *Bruen*'s first prong, the district court delved into *Heller*'s analysis of *Miller* by stating "[t]his Court declines to adopt what Justice Scalia and the majority of the Supreme Court described as 'startling.'" Att. 1 at 13. There are several reasons why it was wrong for the court to suppose that this remark in *Heller* determined that machineguns are outside the scope of the Second Amendment at *Bruen*'s first prong.

First, the Supreme Court identified a list of "longstanding prohibitions" in the *same section* as this "startling" remark, *see Heller*, 554 U.S. at 626-627, and if the Court intended to endorse the machinegun ban, it could have simply included it among this list.

Second, while the Court identified that list as "not… exhaustive," *id*. at 627

n.26, it also clarified that the measures were "presumptively lawful," and therefore

subject to future challenges. Indeed, presumptions are not holdings, and successful

challenges have been mounted against the "longstanding prohibitions" specifically

identified in *Heller*, as well as federal statutes regarded as encompassed by *Heller*'s

non-exhaustive list. *See* Table 1, *infra*.

| Case Name | Challenged Statute and Year Codified | Summary of Statute | *Heller* Prohibition (*Heller*, 554 U.S. at 626-627) | Constitutional Determination |
|---|---|---|---|---|
| *Fraser v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 3:22-cv-410 (E.D. Va., May 10, 2023) | §§ 922(b)(1), (c)<br><br>1968 | Federal Firearms Licensees prohibited from selling handguns to persons 18-20 years of age. | "[C]onditions and qualifications on the commercial sale of arms" | Facially Unconstitutional |
| *Range v. Attorney General*, No. 21-2835 (3rd Cir. 2023) | § 922(g)(1)<br><br>1938 | Possession of firearms prohibited by felons. | "[P]ossession of firearms by felons" | Unconstitutional as applied to plaintiff |
| *Tyler v. Hillsdale County Sheriff's Dept.*, 837 F.3d 678 (6th Cir. 2016) | § 922(g)(4)<br><br>1968 | Firearm possession prohibited by mentally ill persons. | Possession of firearms by the "mentally ill" | Unconstitutional as applied to plaintiff |
| *United States v. Daniels*, No. 22-60596 (5th Cir. Aug. 9, 2023); *see also United States v. Harrison*, No. CR-22-00328-PRW | § 922(g)(3)<br><br>1968 | Possession of firearms prohibited by unlawful users of controlled substances. | Non-exhaustive prohibition | Unconstitutional as applied to defendant |

| (W.D. Okla. Feb. 3, 2023) | | | | |
|---|---|---|---|---|
| *United States v. Price*, No. 2:22-CR-00097 (S.D.W. Va. Oct. 12, 2022) | § 922(k)<br><br>1990 | Possession of firearms with obliterated serial numbers prohibited. | "[C]onditions and qualifications on the commercial sale of arms" | Facially Unconstitutional |
| *United States v. Quiroz*, No. PE:22-cr-00104-DC (W.D. Tex. Sep 19, 2022) | § 922(n)<br><br>1986 | Possession of firearms prohibited by persons under felony indictment. | Non-exhaustive prohibition | Facially Unconstitutional |
| *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (June 30, 2023) | § 922(g)(8)<br><br>1994 | Possession of firearms prohibited by persons subject to domestic-violence restraining order. | Non-exhaustive prohibition | Facially Unconstitutional |

Table 1 – Post-*Heller* cases finding federal firearm statutes unconstitutional.

Third, the majority of the federal statutes identified *supra*, Table 1, are *older* than the machinegun ban. The district court provided no basis for a passing remark in *Heller*'s discussion about machinegun *restrictions* to conclude that the machinegun *ban* is more valid than "presumptively lawful" prohibitions that were longer-standing and subject to constitutional challenges.

Finally, the Supreme Court rejected such a dispositive reading of dicta, saying that "[i]t is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a… dictum in a case where the point

was not at issue and was not argued." *Heller*, 554 U.S. at 625, n.25. The *Heller* court had no occasion to determine the constitutionality of the machinegun ban, and the Court has *never* performed a constitutional analysis of the ban. "[T]he government does not get a free pass simply because Congress has established a 'categorical ban'; it still must prove that the ban is constitutional, a mandate that flows from *Heller* itself." *United States v. Williams*, 616 F.3d 685, 692. (7th Cir. 2010).

C.    **The Machinegun Ban is Not Consistent with This Nation's Historical Traditions of Regulating Arms**

The test in *Bruen* "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, slip op. at 17. *Bruen* explained how courts must use analogical reasoning in the context of the Second Amendment to identify historical regulations that are acceptable as analogues to modern regulations. The "'central' considerations when engaging in an analogical inquiry" should be "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 20. The district court failed to conduct this required analogical inquiry.

If the district court had performed the analogical reasoning that *Bruen requires*, the court should have found that the authorities cited by the government, *Heller*'s authorities prohibiting the carrying of dangerous and unusual weapons, are not acceptable historical analogues to justify the machinegun ban. The analysis of

the government's authorities was already conducted in *Bruen*, where the Court found that "[f]ar from banning the carrying of any *class* of firearms," the dangerous and unusual authorities "merely codified the existing common-law offense of bearing arms to terrorize the people[.]" *Bruen*, slip op. at 38.

Those restrictions on the *manner* in which arms may be carried did not possess the same *how* or *why* that the machinegun ban possesses. The district court failed to come to this conclusion, and furthermore, the court did not perform the required analogical reasoning at *Bruen*'s second prong *whatsoever*. Accordingly, the constitutional analysis performed by the district court did not comport with *Bruen*.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should vacate and reverse the order and judgment of the district court.

DATED this 5th day of September, 2023.     Respectfully Submitted,

*/s/ Jake S. DeWilde*

Jake S. DeWilde

PO Box 267

Wapiti, WY 82450

jake.dewilde@gmail.com

(307) 587-4524

## Certificate of Compliance with Type-Volume Limit
## Typeface Requirements and Type Style Requirements

1.      This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains <u>5404</u> words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point typeface.

DATED this 5th day of September, 2023.      Respectfully Submitted,

*/s/ Jake S. DeWilde*

Jake S. DeWilde

PO Box 267

Wapiti, WY 82450

jake.dewilde@gmail.com

(307) 587-4524

**Certificate of Service**

I, Jake DeWilde, hereby certify that I filed the foregoing document via the Court's electronic-filing system; all parties in this case have consented to electronic service; and the electronic filing of the foregoing document constitutes proof of service to all parties in this case.

DATED this 5th day of September, 2023.     Respectfully Submitted,

*/s/ Jake S. DeWilde* _____

Jake S. DeWilde

PO Box 267

Wapiti, WY 82450

jake.dewilde@gmail.com

(307) 587-4524