**[ORAL ARGUMENT NOT REQUESTED]**

**No. 23-8054**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

———————————

JAKE STANLEY DEWILDE,

*Plaintiff-Appellant,*

v.

UNITED STATES ATTORNEY GENERAL, *et al.*

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the District of Wyoming
District Court Case No. 1:23-cv-00003 (Judge Skavdahl)

———————————

**BRIEF FOR APPELLEES**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*
NICHOLAS VASSALLO
  *United States Attorney*
MICHAEL S. RAAB
BEN LEWIS
  *Attorneys, Appellate Staff
  Civil Division, Room 7250
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-2494*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED APPEALS

GLOSSARY

STATEMENT OF JURISDICTION ............................................................................ 1

STATEMENT OF THE ISSUES .................................................................................. 1

PERTINENT STATUTES AND REGULATIONS ....................................................... 1

STATEMENT OF THE CASE ...................................................................................... 1

      A.    Statutory Background .................................................................... 1

      B.    Procedural History ....................................................................... 2

SUMMARY OF ARGUMENT .................................................................................... 5

STANDARD OF REVIEW .......................................................................................... 8

ARGUMENT ............................................................................................................... 9

I.     DeWilde lacks standing to challenge 18 U.S.C. § 922(o). ..................... 9

II.    18 U.S.C. § 922(o) complies with the Second Amendment. ............... 14

      A.    Supreme Court precedent forecloses DeWilde's challenge ..................... 14

      B.    The text, history, and tradition of the Second Amendment make clear that 18 U.S.C. § 922(o) is constitutional ........................................... 18

      C.    DeWilde's arguments to the contrary lack merit .................................... 34

CONCLUSION .......................................................................................................... 39

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                                     **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................. 10, 12

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979) ..................................................................................... 6, 9

*Baker v. USD 229 Blue Valley,*
   979 F.3d 866 (10th Cir. 2020) .................................................................. 6, 9, 10

*Bevis v. City of Naperville,*
   No. 23-1353, 2023 WL 7273709 (7th Cir. Nov. 3, 2023) ........................ 15, 19, 35, 38

*Caetano v. Massachusetts,*
   577 U.S. 411 (2016) .................................................................................. 33, 34

*Conagra Foods, Inc. v. Americold Logistics, LLC,*
   776 F.3d 1175 (10th Cir. 2015) ....................................................................... 12

*Courage to Change Ranches Holding Co. v. El Paso County,*
   73 F.4th 1175 (10th Cir. 2023) ......................................................................... 8

*Department of Educ. v. Brown,*
   600 U.S. 551 (2023) ........................................................................................ 9

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ............... 4, 5, 6, 7, 8, 14, 15, 16, 17, 18, 19, 20, 21, 22, 30, 36, 37

*English v. State,*
   35 Tex. 473 (1871) ........................................................................................ 22

*Friedman v. City of Highland Park,*
   784 F.3d 406 (7th Cir. 2015) .......................................................................... 15

*Hamblen v. United States,*
   591 F.3d 471 (6th Cir. 2009) ......................................................................... 6, 14

*Hollis v. Lynch,*
827 F.3d 436 (5th Cir. 2016) ........................................................3, 6, 12, 14, 15, 33, 37

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...............................................................................................5, 9, 10

*Luna Perez v. Sturgis Pub. Sch.,*
598 U.S. 142 (2023) ........................................................................................................ 37

*National Rifle Ass'n of Am. v. Magaw,*
132 F.3d 272 (6th Cir. 1997) ....................................................................................4, 6, 10

*New York State Rifle & Pistol Ass'n v. Bruen,*
142 S. Ct. 2111 (2022) ....................4, 6-7, 14, 18, 19, 20, 21, 22, 28, 30, 31, 33, 34, 35

*Nordyke v. King,*
644 F.3d 776 (9th Cir. 2011) ......................................................................................8, 38

*O'Neill v. State,*
16 Ala. 65 (1849) ............................................................................................................ 22

*Pagan v. Calderon,*
448 F.3d 16 (1st Cir. 2006) ............................................................................................ 13

*Patterson v. Winn,*
30 U.S. (5 Pet.) 233 (1831) ............................................................................................ 20

*Potthoff v. Morin,*
245 F.3d 710 (8th Cir. 2001) .......................................................................................... 13

*Ramos v. Louisiana,*
140 S. Ct. 1390 (2020) .................................................................................................... 17

*Rocky Mountain Gun Owners v. Polis,*
No. 1:23-cv-01077, 2023 WL 5017253 (D. Colo. Aug. 7, 2023) ................................. 10

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) .......................................................................................................... 9

*Staples v. United States,*
511 U.S. 600 (1994) ...................................................................................................3, 31

iv

*State v. Langford*,
    10 N.C. 381 (1824) ................................................................ 22

*State v. Lanier*,
    71 N.C. 288 (1874) ................................................................ 22

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997) ................................................................ 17

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................... 6, 9

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ...................................................... 5-6, 9, 10

*Teter v. Lopez*,
    76 F.4th 938 (9th Cir. 2023) ................................................... 35

*Toone v. Wells Fargo Bank, N.A.*,
    716 F.3d 516 (10th Cir. 2013) .................................................. 11

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................ 5, 9

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ................................................. 32

*United States v. Fincher*,
    538 F.3d 868 (8th Cir. 2008) ................................................. 6, 14

*United States v. Henry*,
    688 F.3d 637 (9th Cir. 2012) .............................................. 6, 14, 32

*United States v. Jackson*,
    69 F.4th 495 (8th Cir. 2023) ................................................... 17

*United States v. Lain*,
    773 F. App'x 476 (10th Cir. 2019) ......................................... 3, 12, 14

*United States v. Lynch*,
    881 F.3d 812 (10th Cir. 2018) ................................................... 8

*United States v. Maloid*,
   71 F.4th 795 (10th Cir. 2023) ...................................................................... 17

*United States v. McCane*,
   573 F.3d 1037 (10th Cir. 2009) .................................................................... 16

*United States v. Miller*,
   307 U.S. 174 (1939) ............................................................................4, 6, 14

*United States v. Nixon*,
   919 F.3d 1265 (10th Cir. 2019) .................................................................... 17

*United States v. O'Brien*,
   560 U.S. 218 (2010) ...................................................................................... 32

*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown*
   *Caliber Serial No.: LW001804*,
   822 F.3d 136 (3d Cir. 2016) ..............................................................6, 14, 15

*United States v. Thompson/Ctr. Arms Co.*,
   504 U.S. 505 (1992) ...................................................................................... 32

*United States v. Zaleski*,
   489 F. App'x 474 (2d Cir. 2012) ............................................................ 6, 14

*Vincent v. Garland*,
   80 F.4th 1197 (10th Cir. 2023) ..............................................................15-16

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................ 9

*Wilson, In re*,
   860 F. App'x 147 (10th Cir. 2021) .......................................................... 12, 13

## U.S. Constitution:

Amend II ........................................................................................................ 18

Art. I, § 8, cls. 15-16 .................................................................................... 36

Art. I, § 8, cls. 12-13 .................................................................................... 36

**Statutes:**

Act of Jan. 9, 1934, Act 36, § 7, 1933 Haw. Laws 38-39 ................................... 28

Act of Jan. 27, 1838, ch. 137, § 1, 1838 Tenn. Pub. Acts 200.......................... 23

Act of Jan. 29, 1795, ch. 2, 1795 Mass. Acts 436 ........................................... 22

Act of Jan. 6, 1841, Penal Code, ch. 7, § 4, 1840 Ala. Laws 148-49 ............................ 24

Act of Jan. 27, 1838, ch. 137, § 2, 1838 Tenn. Pub. Acts 200-01 ................................ 24

Act of Feb. 1, 1881, § 1, 1881 Colo. Laws 74 ................................................ 24

Act of Feb. 2, 1838, ch. 101, § 1, 1838 Va. Acts 76 ........................................ 24

Act of Feb. 2, 1857, ch. 34, § 23(4), 1856 N.C. Laws 34 .................................. 24

Act of Feb. 6, 1841, ch. 1, § 1, 1841 Miss. Laws 52 ........................................ 23

Act of Feb. 10, 1838, No. 24, § 1, 1838 Fla. No. 24, § 1 .................................. 23

Act of Feb. 11, 1925, ch. 31, § 1, 1925 Or. Laws 42........................................ 27

Act of Feb. 14, 1872, ch. 7, § 1, 1872 Wis. Laws 17 ...................................... 26

Act of Feb. 14, 1913, No. 201, § 16, 1912 Vt. Acts 260-61 .............................. 27

Act of Feb. 15, 1872, ch. 7, § 1, 1872 Wis. Laws 17 ...................................... 24

Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57 .....................................23, 26

Act of Feb. 18, 1885, § 1, 1885 Or. Laws 33 ...........................................24, 26

Act of Feb. 18, 1921, ch. 83, § 97, 1921 Wyo. Sess. Laws 112-13 .................. 28

Act of Feb. 19, 1867, No. 259, ch. 2, § 10, 1867 Ala. Laws 263...................... 23

Act of Feb. 22, 1884, ch. 143, § 1, 1884 Va. Acts 180...............................24, 26

Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Laws 129.................................. 23

Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Acts 129 .................................................... 24

Act of Feb. 25, 1869, ch. 33, § 1, 1869 Wis. Laws 35 .................................................... 27

Act of Feb. 25, 1931, No. 58, § 1, 1931 S.C. Acts 78 .................................................... 27

Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws 813 ................................................. 29

Act of Feb. 26, 1915, No. 205, § 1, 1915 Vt. Laws 344 ................................................. 25

Act of Feb. 26, 1915, No. 205, § 2, 1915 Vt. Laws 344 ................................................. 26

Act of Feb. 27, 1869, ch. 39, § 1, 1869 Minn. Laws 50-51 ............................................ 27

Act of Feb. 28, 1878, ch. 46, § 1, 1878 Miss. Laws 175 ............................................ 24, 26

Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws 245 ............................................ 29

Act of Mar. 1, 1864, ch. 128, § 1, 1864 Cal. Stat. 115 ............................................ 24, 26

Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts 1288 ........................................... 29

Act of Mar. 4, 1873, ch. 58, pt. 1, ch. 4, § 25, 1873 Neb. Laws 724 ........................... 24

Act of Mar. 5, 1879, ch. 127, § 1, 1879 N.C. Laws 231 ........................................... 24, 26

Act of Mar. 6, 1852, § 103, 1851 Utah Laws 137 ...................................................... 27

Act of Mar. 6, 1882, ch. 219, § 1, 1881 Va. Acts 233 ................................................ 24

Act of Mar. 6, 1891, No. 2, § 1, 1893 Ariz. Laws 3 ................................................ 24, 26

Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335 ................................................ 29

Act of Mar. 7, 1925, ch. 460, § 4, 1925 N.C. Laws 530 ................................................ 28

Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts 137 ................................................ 29

Act of Mar. 8, 1909, ch. 240, § 22, 1909 S.D. Laws 450 ................................................ 27

Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts 469 .................................................. 29

Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws 306 ............................................... 29

Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws 489 .............................................. 29

Act of Mar. 13, 1889, No. 13, § 1, 1889 Ariz. Laws 30-31 ......................................... 26

Act of Mar. 13, 1913, ch. 64, § 1, 1913 Minn. Laws 55 .............................................. 28

Act of Mar. 14, 1855, No. 120, § 115, 1855 La. Acts 148 ........................................... 24

Act of Mar. 15, 1915, ch. 83, § 1, 1915 N.D. Laws 96 ............................................ 25, 27

Act of Mar. 17, 1909, ch. 17, § 1, 1909 N.J. Laws 34–35 ............................. 25, 26-27

Act of Mar. 18, 1859, § 1, 1859 Ohio Laws 56-57 ...................................................... 24

Act of Mar. 18, 1889, No. 13, § 1, 1889 Ariz. Laws 30-31 ......................................... 23

Act of Mar. 18, 1929, ch. 84, § 14, 1929 Ariz. Laws 247 ........................................... 28

Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws 181 ............................................... 29

Act of Mar. 22, 1909, ch. 249, § 266, 1909 Wash. Laws 973 ..................................... 27

Act of Mar. 24, 1882, ch. 135, § 1, 1882 W. Va. Acts 421 ......................................... 26

Act of Mar. 24, 1909, ch. 129, § 1, 1909 Me. Laws 141-42 ........................................ 28

Act of Mar. 28, 1912, ch. 225, § 2, 1912 N.J. Laws 365 ............................................. 26

Act of Mar. 29, 1882, ch. 135, § 1, 1882 W. Va. Acts 421 ......................................... 23

Act of Mar. 29, 1927, ch. 169, 1927 Del. Laws 516 .................................................... 28

Act of Mar. 31, 1874, ch. 239, § 6, 1874 Va. Laws 282 .............................................. 23

Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts 191-92 ......................................... 23, 26

Act of Apr. 1, 1881, ch. 96, § 3, 1881 Ark. Acts 191-92 ......................................... 23, 25

Act of Apr. 1, 1913, ch. 186, § 1, 1913 N.J. Laws 339 ............................................... 27

Act of Apr. 6, 1916, ch. 137, § 1, 1916 N.Y. Laws 338-39................................................ 28

Act of Apr. 7, 1849, ch. 278, § 1, 1849 N.Y. Laws 403 ................................................... 25

Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404 ................................................... 25

Act of Apr. 7, 1886, ch. 375, § 1, 1886 Md. Laws 602...............................................24, 26

Act of Apr. 7, 1911, ch. 128, § 1, 1911 N.J. Laws 185................................................... 28

Act of Apr. 8, 1873, No. 87, § 1, 1873 Ala. Laws 130 .................................................... 26

Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws 189 ......................................................... 29

Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233 .............................................. 29

Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25 ......................................23, 26

Act of Apr. 14, 1917, ch. 243, § 1, 1917 Minn. Laws 354 .............................................. 26

Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws 1033 .............................................. 29

Act of Apr. 16, 1881, § 1, 1881 Ill. Laws 73  ................................................................. 25

Act of Apr. 16, 1881, § 1, 1881 Ill. Laws 73-74 .............................................................. 25

Act of Apr. 16, 1881, § 4, 1881 Ill. Laws 74....................................................................24, 26

Act of Apr. 16, 1915, Act 103, § 1, 1915 Haw. Laws 121 ..........................................24, 26

Act of Apr. 16, 1926, ch. 261, 1926 Mass. Acts 256 ...................................................... 28

Act of Apr. 18, 1905, ch. 172, § 1, 1905 N.J. Laws 324................................................. 24

Act of Apr. 19, 1913, ch. 297, § 2, 1913 Iowa Acts 307 ..........................................23, 26

Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201 ................................................ 29

Act of Apr. 21, 1915, ch. 133, § 17, 1915 N.H. Laws 180-81 ........................................ 27

Act of Apr. 22, 1875, No. 97, § 1, 1875 Mich. Pub. Acts 136 ........................................ 27

Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws 257 ......................................... 29

Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777 .................................................... 29

Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts 413-14 ........................................... 29

Act of Apr. 27, 1927, ch. 1052, § 8, 1927 R.I. Pub. Laws 259 ........................................ 28

Act of Apr. 27, 1933, No. 120, § 2, 1933 Haw. Laws 117 ................................................ 29

Act of Apr. 29, 1929, ch. 190, § 1, 1929 Neb. Laws 674 .................................................. 29

Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231–32 ............................... 24, 26

Act of May 4, 1917, ch. 145, § 1, 1917 Cal. Stat. 221 ...................................................... 26

Act of May 4, 1917, ch. 145, § 2, 1917 Cal. Stat. 221 ...................................................... 25

Act of May 14, 1917, ch. 145, § 1, 1917 Cal. Stat. 221 .................................................... 23

Act of May 14, 1917, ch. 145, § 2, 1917 Cal. Stat. 221 .............................................. 23, 24

Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938 .................................................... 29

Act of May 18, 1911, H.B. No. 320, § 1, 1911 Ohio Laws 124 ........................................ 25

Act of May 24, 1879, § 1, 1879 Ill. Laws 114–15 ...................................................... 24, 26

Act of May 24, 1923, No. 228, Art. VII, § 704(a), 1923 Pa. Laws 386 ........................... 28

Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442 ...................................... 25, 26, 27

Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157 .................................................. 29

Act of May 31, 1887, No. 129, §1, 1887 Mich. Pub. Acts 144 ................................... 24, 26

Act of June 1, 1929, H.R. 498, § 1, 1929 Mo. Laws 170 .................................................. 29

Act of June 2, 1893, ch. 4124, § 1, 1893 Fla. Laws 52 ..................................................... 24

Act of June 2, 1893, ch. 4124, § 3, 1893 Fla. Laws 52 ..................................................... 25

Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888 .................... 25, 26, 28, 29

Act of June 5, 1925, ch. 3, 1925 W. Va. Acts 24-32 ..................................... 29

Act of June 16, 1931, No. 328, § 236, 1931 Mich. Pub. Acts 671 ................................. 27

Act of June 30, 1837, No. 11, § 2, 1837 Ala. Laws 7 ......................................... 23

Act of July 2, 1931, § 2, 1931 Ill. Laws 452 ......................................... 29

Act of July 3, 1918, No. 88, § 3, 1918 La. Acts 131 ........................................ 28

Act of July 7, 1921, ch. 530, § 1, 1921 Wis. Laws 870 ...................................... 27

Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 337 ......................................... 29

Act of Aug. 6, 1868, No. 13, ch. 7, § 11, 1868 Fla. Laws 95 ........................................... 25

Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219 .............................................. 29

Act of Nov. 12, 1849, No. 36, § 1, 1849 Vt. Acts 26 .......................................... 25

Act of Nov. 12, 1849, No. 36, § 2, 1849 Vt. Acts 26 ......................................... 25

Act of Nov. 14, 1912, No. 237, § 1, 1912 Vt. Acts 310 ....................................... 28

Act of Nov. 23, 1907, No. 55, § 1, 1907 Ala. Laws 80 ................................... 23, 25

Act of Nov. 23, 1907, No. 55, § 2, 1907 Ala. Laws 80 ....................................... 23-24, 26

Act of Nov. 25, 1884, No. 76, § 1, 1884 Vt. Acts. 74-75 ................................. 27

Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76 ..................................... 29

Act of Dec. 21, 1771, ch. 539, § 10, 1771 N.J. Laws 346 ....................................... 27

Act of Dec. 24, 1880, No. 362, § 1, 1880 S.C. Acts 447–48 ................................... 24, 26

Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90 ..................................................... 23

Act of Dec. 27, 1873, ch. 226, § 168, 1873 W. Va. Acts 709 ........................................... 24

An Act to Establish a Penal Code,
§ 662, 1887 Ariz. Laws 726 ..................................................................24, 26

2 Edw. 3, c. 3 (1328) ............................................................................ 20

18 U.S.C. § 921(a)(24) ............................................................................ 1

18 U.S.C. § 922(g)(1) ............................................................................ 16

18 U.S.C. § 922(o) ............................................ 1, 2, 5, 6, 7, 9, 14, 18, 34

18 U.S.C. § 922(o)(1) ............................................................................ 2

18 U.S.C. § 922(o)(2)(A) ..................................................................2, 33, 38

18 U.S.C. § 922(o)(2)(B) ............................................................................ 2

26 U.S.C. §§ 5801-5802 ............................................................................ 2

26 U.S.C. §§ 5811-5812 ............................................................................ 2

26 U.S.C. §§ 5821-5822 ............................................................................ 2

26 U.S.C. §§ 5841-5842 ............................................................................ 2

26 U.S.C. § 5845(a)-(b) ....................................................................2, 32

26 U.S.C. § 5845(b) ............................................................................ 1

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1654 ............................................................................ 13

Alaska Stat. § 11.61.200 ............................................................................ 32

Ariz. Rev. Stat. Ann. § 13-3101 ............................................................................ 32

Ariz. Rev. Stat. Ann. § 13-3102 ............................................................................ 32

Cal. Penal Code § 32625 ................................................................. 32

Colo. Rev. Stat. § 18-12-102 ......................................................... 32

D.C. Code § 22-4514 ...................................................................... 32

Del. Code tit. 11, § 1444 ................................................................ 32

Fla. Stat. § 790.221 ......................................................................... 32

Ga. Code Ann. § 16-11-122 ........................................................... 32

Haw. Rev. Stat. § 134-8 .................................................................. 32

720 Ill. Comp. Stat. 5/24-1 ........................................................... 32

Ind. Code § 35-47-5-8 ..................................................................... 32

Iowa Code § 724.1 ........................................................................... 32

Iowa Code § 724.3 ........................................................................... 32

Kan. Stat. Ann. § 21-6301 ............................................................. 32

La. Stat. Ann. § 40:1752 ................................................................ 32

Mass. Gen. Laws ch. 140, § 128 ................................................... 32

Mass. Gen. Laws ch. 140, § 131 ................................................... 32

Mass. Gen. Laws ch. 140, § 131M ............................................... 32

Me. Rev. Stat. Ann. tit. 17-A, § 1051 .......................................... 32

Me. Rev. Stat. Ann. tit. 17-A, § 1052 .......................................... 32

Mich. Comp. Laws § 750.224 ........................................................ 32

Minn. Stat. § 609.67 ....................................................................... 32

Mo. Ann. Stat. § 571.020 ............................................................... 32

Mo. Ann. Stat. § 571.020(1)(6) ................................................... 32

N.C. Gen. Stat. § 14-409 ........................................................... 32

N.D. Cent. Code § 62.1-05-01 ................................................... 32

Neb. Rev. Stat. § 28-1203 ......................................................... 32

Nev. Rev. Stat. § 202.350 ......................................................... 32

N.J. Stat. Ann. § 2C:39-5 .......................................................... 32

N.J. Stat. Ann. § 2C:58-5 .......................................................... 32

N.Y. Penal Law § 265.02 ........................................................... 32

Ohio Rev. Code Ann. § 2923.11 ................................................ 32

Ohio Rev. Code Ann. § 2923.17 ................................................ 32

1890 Okla. Laws 495 ........................................................... 23, 26

Or. Rev. Stat. § 166.272 ............................................................ 32

Or. Rev. Stat. § 166.272(4) ....................................................... 32

18 Pa. Stat. § 908 ..................................................................... 32

Penal Code, § 7094, 1895 N.D. Rev. Codes 1259 ....................... 27

11 R.I. Gen. Laws § 11-47-8 ...................................................... 32

S.C. Code Ann. § 16-23-230 ...................................................... 32

S.D. Codified Laws § 22-1-2 ...................................................... 32

S.D. Codified Laws § 22-14-6 .................................................... 32

Tenn. Code Ann. § 39-17-1302 .................................................. 32

Tex. Penal Code Ann. § 46.05 ......................................................... 32

W. Va. Code § 61-7-9 ...................................................................... 32

Wash. Rev. Code § 9.41.190 ........................................................... 32

Wis. Stat. § 941.26 .......................................................................... 32

**Legislative Materials:**

132 Cong. Rec. 9600 (1986) ........................................................... 31

H.R. Rep. No. 83-1337 (1954) ........................................................ 31

H.R. Rep. No. 99-495 (1986) ....................................................... 2, 31

*National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means,*
    73d Cong. 4 (1934) .................................................................. 1, 2

S. Rep. No. 73-1444 (1934) ................................................... 2, 31, 32

S. Rep. No. 90-1501 (1968) ............................................................ 37

**Other Authorities:**

Act of June 14, 1701, ch. 7, *in* 1 *Laws of New Hampshire 679*
    (Albert Stillman Batchellor ed., 1904) ......................................... 21

Act of Nov. 1, 1692, ch. 18, § 6, *in* 1 *Acts and Resolves of*
    *the Province of Massachusetts Bay* (1869) ................................... 21

Act of Nov. 27, 1786, ch. 21, *in A Collection of all such Acts of the General Assembly of*
    *Virginia, of a Public and Permanent Nature, as are now in Force* (1794) ............. 21

An Act Against Wearing Swords, &c., ch. 9, *in* Aaron Leaming & Jacob Spicer, *Grants,*
    *Concessions, and Original Constitutions of the Province of New Jersey* (2d ed. 1881) ............ 21

ATF, Firearms Commerce in the United States: Annual Statistical Update 2021,
    https://perma.cc/5FBE-2C9C .................................................... 33

4 William Blackstone, *Commentaries on the Laws of England* (10th ed. 1787) ................ 20

1 Richard Burn, *The Justice of the Peace, and Parish Officer* (2d ed. 1756)......................20, 31

*Definition of "Frame or Receiver" and Identification of Firearms,*
    87 Fed. Reg. 24652 (Apr. 26, 2022) ............................................................. 37

John A. Dunlap, *The New-York Justice* (1815)........................................................ 22

John Ellis, *The Social History of the Machine Gun* (1986)......................................1, 29

Joseph Greenleaf, *An Abridgment of Burn's Justice of the Peace and Parish Officer* (1773) ... 21

1 William Hawkins, *A Treatise of the Pleas of the Crown* (1716) .......................... 20

Charles Humphreys, *A Compendium of the Common Law in Force in Kentucky* (1822)....... 22

William J. Krouse, Cong. Research Serv., *Gun Control Legislation* (2012) ...................... 33

Eliphalet Ladd, *Burn's Abridgement, Or The American Justice* (2d ed. 1792) (N.H.).......... 21

Ellis Lewis, *An Abridgment of the Criminal Law of the United States* 64 (1847).................. 22

*Machineguns, Destructive Devices and Certain Other Firearms; Background Checks for Responsible Persons of a Trust or Legal Entity With Respect To Making or Transferring a Firearm,*
    81 Fed. Reg. 2658 (Jan. 15, 2016) ............................................................... 13

George C. Neumann, *Swords and Blades of the American Revolution* (1973) ...................... 19

James Parker, *Conductor Generalis* (1764)............................................................... 21

James Parker, *Conductor Generalis* (Robert Hodge printing 1788).................................... 21

James Parker, *Conductor Generalis* (Robert Campbell printing 1792) .............................. 21

1 William Oldnall Russell, *A Treatise on Crimes and Indictable Misdemeanors* (1831)......... 22

Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers,* 83 Law & Contemp. Probs. 231 (2020)................................................... 28

Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights,*
    80 L. & Contemp. Probs 55 (2017) ............................................................. 29

Robert J. Spitzer, *Understanding Gun Law History after Bruen: Moving Forward by Looking Back*, 51 Fordham Urb. L.J. 58 (2023) ........................................................ 23, 25, 27, 29

Henry J. Stephen, *Summary of the Criminal Law* (1840) ...................................................... 22

Francis Wharton, *A Treatise on the Criminal Law of the United States* (1852) ..................... 22

3 Bird Wilson, *The Works of the Honourable James Wilson* (1804) ....................................... 22

William Waller Hening, *The New Virginia Justice* (1795) ..................................................... 21

**STATEMENT OF RELATED APPEALS**
**PURSUANT TO CIRCUIT RULE 28.2(C)(3)**

Counsel for appellees is not aware of any prior or related appeals.

## GLOSSARY

ATF                         Bureau of Alcohol, Tobacco, Explosives and
                            Firearms

NFA                         National Firearms Act of 1934

## STATEMENT OF JURISDICTION

Plaintiff Jake DeWilde invoked jurisdiction under 28 U.S.C. § 1331. The district court dismissed the complaint for lack of jurisdiction and for failure to state a claim, entering final judgment on July 17, 2023. *See* ROA.4. DeWilde timely appealed on July 28, 2023. *See id.* This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether DeWilde has standing to challenge 18 U.S.C. § 922(o).

2. Whether 18 U.S.C. § 922(o) complies with the Second Amendment.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

Shortly after World War I, the machinegun entered the civilian market and was soon widely used by criminals. *See* John Ellis, *The Social History of the Machine Gun* 149-77 (1986). Although many States across the nation enacted bans, *see infra* 29 n.23, these automatic weapons—which shoot "more than one shot, without manual reloading, by a single function of the trigger," 26 U.S.C. § 5845(b); 18 U.S.C. § 921(a)(24)—brought a crisis "beyond the power of control of merely local authorities," *National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73d Cong. 4 (1934) (statement of Attorney General Homer Cummings).

To address the "law violator" and "his most dangerous weapon," S. Rep. No. 73-1444, at 1-2 (1934), the National Firearms Act of 1934 (NFA) enacted a $200 tax on machineguns and required that they be registered with the federal government. *See* 26 U.S.C. §§ 5801-5802, 5811-5812, 5821-5822, 5841-5842, 5845(a)-(b). In this way, the NFA made it more difficult for "the criminal class" to obtain the weapons and made it easier to "convict [criminals] when they have the weapons." *National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73d Cong. at 6, 12, 22 (statement of Attorney General Homer Cummings).

In the next decades, the tax did not change, and by 1986, there was a "need for more effective protection of law enforcement officers from the proliferation of machine guns." H.R. Rep. No. 99-495, at 7 (1986). In response, Congress enacted the federal machinegun ban, 18 U.S.C. § 922(o), which prohibits the sale and possession of new machineguns. The ban makes it a crime "to transfer or possess a machinegun," *id.* § 922(o)(1), made after the effective date of the law, which is May 19, 1986, *see id.* § 922(o)(2)(B), unless a governmental entity is involved in the transfer or possession, *see id.* § 922(o)(2)(A).

## B.    Procedural History

**1.** Plaintiff Jake DeWilde, proceeding *pro se*, brings this facial challenge to 18 U.S.C. § 922(o) under the Second Amendment. *See* ROA.73-74. The sole claim in his amended complaint is that the machinegun ban violates his Second Amendment right to keep and bear arms—specifically, his purported right to have an M-16.

2

*See* ROA.79.  The M-16 is "a rifle in service with the United States military."  *Hollis v. Lynch*, 827 F.3d 436, 440 n.2 (5th Cir. 2016).  It is "a selective fire rifle that allows the operator, by rotating a selector switch, to choose semiautomatic or automatic fire."  *Staples v. United States*, 511 U.S. 600, 603 (1994).  DeWilde alleges that he "desires to own an M16 machinegun" for "defense of hearth and home and militia functions."  ROA.79.  He further alleges that he submitted an application to the Bureau of Alcohol, Tobacco, Explosives and Firearms (ATF) "requesting permission to make an M16 machinegun" but was denied due to the ban.  *See* ROA.79.

The application, attached as an exhibit to the initial complaint, reflects that the application to make and register an M-16 machinegun was made by a "trust or legal entity" named "DeWilde Arms Trust."  ROA.15.  It then lists Jake DeWilde as the "responsible person" associated with that trust, *see* ROA.22, who signed and submitted the form in his capacity as "Trustee," ROA.15.  The application was denied because it is against the law to make or manufacture a machinegun.[1]  *See* ROA.15.

**2.**  The district court dismissed the case, holding that DeWilde lacked standing to bring suit and that the machinegun ban was constitutional.  *See* ROA.284.  The court determined that DeWilde alleged no particularized and imminent injury-in-fact because he "merely expresse[d] a desire" to own a machinegun and did "not plead any

---

[1] In his initial complaint, plaintiff also sued as trustee on behalf of DeWilde Arms Trust, *see* ROA.6, but he amended the complaint to drop the trust, *see* ROA.58, 73-74; *United States v. Lain*, 773 F. App'x 476, 477 (10th Cir. 2019) (holding that *pro se* trustee could not represent trust because "he lacks the authority to practice law").

facts regarding when or how he plans to own such a gun nor allege any fear or likelihood of investigation, arrest, or prosecution." ROA.287. The court further noted that the application to make a machinegun submitted to ATF was signed by DeWilde in his capacity as trustee on behalf of the trust and so did not indicate that DeWilde ever "individually sought to make, register, or possess a machinegun." ROA.286. Under such circumstances, the district court explained, finding standing "would allow virtually anyone to challenge a federal act concerning gun control." ROA.288 (quoting *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997)).

In the alternative, the court concluded that DeWilde failed to state a claim because machineguns were not protected by the Second Amendment. *See* ROA.289. The court explained that the claim was foreclosed by *United States v. Miller*, 307 U.S. 174 (1939), *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), where the Supreme Court stated, among other things, that it would be "startling" to think that "the National Firearms Act's restrictions on machineguns . . . might be unconstitutional," *Heller*, 554 U.S. at 624, and accepted as uncontroversial that "M-16 rifles and the like—may be banned," *id.* at 627-28. *See* ROA.292-93.

In addition, the district court independently concluded that machineguns fell outside the scope of the Second Amendment because, when read in historical context, that right extends only to weapons "in common use" and does not extend to

4

"weapons not typically possessed by law-abiding citizens for lawful purposes," like "dangerous and unusual weapons," *Heller*, 554 U.S. at 625, 627.  Adopting the consensus position of the courts of appeals, the district court concluded that machineguns are dangerous and unusual weapons outside the scope of the Second Amendment.  *See* ROA.290-92 (collecting cases).  In doing so, the court rejected DeWilde's argument that he was entitled to possess the firearms used by the armed services because that argument lacked a limiting principle: If taken seriously, it would mean that law-abiding citizens were entitled to "[t]anks, bombs, [and] nuclear weapons."  ROA.292.

## SUMMARY OF ARGUMENT

DeWilde's challenge to 18 U.S.C. § 922(o) was properly dismissed.  As the district court correctly concluded, DeWilde lacks standing to challenge the federal machinegun ban because he has suffered no injury-in-fact, and he lacks a basis to challenge the machinegun ban because the text, history, and tradition of the Second Amendment reflect that it is permissible for the government to ban machineguns.

**I.**  DeWilde lacks standing to challenge 18 U.S.C. § 922(o) because he has not established that he has suffered "an injury in fact that is concrete, particularized, and actual or imminent."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  To bring a pre-enforcement constitutional challenge to the federal machinegun ban, DeWilde must allege an actual "intention to engage in a course of conduct . . . proscribed by [the] statute."  *Susan B.*

5

*Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  The amended complaint only alleges that DeWilde "desires to own an M16 machinegun," ROA.79, which is insufficient to raise an inference that DeWilde actually intends to undertake a course of conduct that would violate the law, *see, e.g.*, *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 875 (10th Cir. 2020) ("desire" not enough); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("vague desire" not enough); *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) ("wish" not enough).  As the district court correctly explained, the amended complaint and its exhibits do not support that DeWilde ever "individually sought to make, register, or possess a machinegun."  *See* ROA.286.

**II.**  If this Court reaches the merits, it should reject DeWilde's facial challenge to the federal machinegun ban under the Second Amendment.  The courts of appeals have uniformly upheld 18 U.S.C. § 922(o).  *See, e.g.*, *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (unpublished); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.: LW001804*, 822 F.3d 136, 143-44 (3d Cir. 2016); *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016); *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012).  That result follows from controlling precedent as well as text, history, and tradition.

**A.**  In *United States v. Miller*, 307 U.S. 174 (1939), *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111

(2022), the Supreme Court made clear that the Second Amendment does not protect machineguns like M-16s. The Court has recognized a textual and historical limitation on the right that would make it "startling" to think that "the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." *Heller*, 554 U.S. at 624. The Court has therefore accepted as uncontroversial that "M-16 rifles and the like— may be banned." *Id.* at 627. That recognized limitation controls this case.

**B.** An independent inquiry into the constitutionality of 18 U.S.C. § 922(o) based on "the Second Amendment's text, as informed by history," and the "Nation's historical tradition of firearm regulation" likewise supports that the machinegun ban is permissible. *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126-27 (2022). As the Supreme Court has explained, the text, history, and tradition of the Second Amendment support that a government may ban the possession of "weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. As explained below, the federal machinegun ban is consistent with that principle because it bans a firearm that is not typically possessed by law-abiding citizens for lawful purposes.

**C.** DeWilde's contrary position—that he is entitled to a machinegun because the military issues machineguns to members of the armed services on active duty—is unsupported and lacks a limiting principle. The military, the professional standing army for the United States, is different from the militia, the group of "all able-bodied men" that might be called as a fighting force. *See Heller*, 554 U.S. at 596. It is

irrelevant that machineguns are used by the military because the question whether a firearm is typically possessed by law-abiding citizens for lawful purposes is an inquiry into whether a firearm is typically possessed by private citizens for private purposes like self-defense. *See id.* at 624, 627. There is no authority indicating that the issuance of a firearm to members of the military on active duty counts for this inquiry, which concerns the constitutional rights of private people as individuals.

DeWilde would read into the Second Amendment an unqualified right for civilians to possess any "bearable" military instrument. Pl.'s Br. 16. But civilians do not have a right to shoulder-mounted rocket-propelled grenade launchers, anti-tank weapons, guided missiles, or suitcase bombs. "[I]t is obvious that the Second Amendment does not protect the right to keep a nuclear weapon in one's basement, or a chemical or biological weapons in one's attic, or a tank in one's backyard." *Nordyke v. King*, 644 F.3d 776, 797 n.6 (9th Cir. 2011) (Gould, J., concurring in part and in the judgment).

## STANDARD OF REVIEW

This Court reviews questions of standing de novo. *Courage to Change Ranches Holding Co. v. El Paso County*, 73 F.4th 1175, 1188 (10th Cir. 2023). Challenges to the constitutionality of a statute are reviewed de novo, "with the presumption that the statute is constitutional." *United States v. Lynch*, 881 F.3d 812, 817 (10th Cir. 2018).

# ARGUMENT

**I.      DeWilde lacks standing to challenge 18 U.S.C. § 922(o).**

As the district court correctly concluded, DeWilde lacks Article III standing to challenge the federal machinegun ban. The "'irreducible constitutional minimum of standing' contains three elements that a plaintiff must plead and—ultimately—prove." *Department of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (quotations omitted). One of those elements is the requirement that a plaintiff plead "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560-61). The plaintiff must "clearly allege facts demonstrating" this injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

**A.** DeWilde has not alleged facts showing that he has suffered an actual or imminent injury. The complaint primarily suggests that he suffers an injury because 18 U.S.C. § 922(o) generally bans the possession of machineguns, and he "desires to own an M16 machinegun," ROA.79. But to bring a constitutional challenge on that basis, he must allege an actual "intention to engage in a course of conduct . . . proscribed by [the] statute." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). It is not enough to have the "desire," *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 875 (10th Cir. 2020), "vague desire," *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009), or

9

abstract "wish" to own a prohibited firearm, *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997).  DeWilde must demonstrate an actual intention to undertake a course of conduct that would violate the federal firearms laws in order to establish an injury from those laws.  *Susan B. Anthony List*, 573 U.S. at 159.

DeWilde has not alleged facts supporting an actual intention to unlawfully own a machinegun.  The "naked assertion[]" that he desires to own a machinegun is insufficient where that assertion is "devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  That is especially the case here, where DeWilde has not identified any actual "attempt or concrete plans" to unlawfully own a machinegun himself.  *Baker*, 979 F.3d at 876.  He has not, for example, attached an application that he sent to ATF on his own behalf, requesting permission to make or own a machinegun himself.  *See* ROA.286.  As the district court correctly explained, the amended complaint and its exhibits do not support that DeWilde ever "individually sought to make, register, or possess a machinegun."  *Id.* Any "some day" intentions to do so cannot support an actual injury.  *Lujan*, 504 U.S. at 564.[2]

---

[2] DeWilde references a district court case for the proposition that it is sufficient to allege that a plaintiff "desire[s] to purchase firearms for lawful purposes."  Br. 10 (quotation marks omitted).  The individual plaintiffs in that case appear to have submitted declarations purporting to substantiate an intent to violate the law, *see Rocky Mountain Gun Owners v. Polis*, No. 1:23-cv-01077, 2023 WL 5017253, at *6 (D. Colo. Aug. 7, 2023), and in any event, as DeWilde acknowledges, that case is currently on appeal.

In reaching this conclusion, the district court properly discounted the application on behalf of a trust that DeWilde referred to in his amended complaint. The district court was tasked with assessing whether DeWilde had plausibly alleged that he had "submitted an . . . [a]pplication to [m]ake and [r]egister a firearm" in his individual capacity and had "request[ed] permission to make an M16 machinegun" himself. ROA.79. Although a district court must ordinarily "accept the well-pleaded factual allegations of the complaint," that rule does not apply where there are "documents referred to in the complaint," and "[t]he face of [those documents] contradicts the [complaint's] allegations." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (quotation marks omitted). DeWilde's amended complaint, in which he only brought suit in his individual capacity, alleged that he had requested permission to make a machinegun. ROA.79. But that application was actually made by a trust and its trustee. Because the application did not match the allegations, the district court properly disregarded both. *See* ROA.286.

**B.** DeWilde argues on appeal (at 4–11) that he suffered an injury when the trust was denied permission to make a machinegun because he signed and submitted the application in his capacity as a trustee. This application, DeWilde argues, reflects an attempt to engage in an unlawful course of conduct where he himself would in fact possess the machinegun as the trustee. *See* Br. 11. As the district court explained, DeWilde could no longer rely on injuries arising from his role as a trustee because the trust was no longer a plaintiff, and DeWilde was no longer participating in the lawsuit

as a trustee.  Although DeWilde initially brought suit in his capacity as a trustee on behalf of the trust, *see* ROA.6, he withdrew that representation because a *pro se* trustee cannot "represent the trust's interests because he lacks the authority to practice law, and appealing on behalf of a separate entity involves the practice of law."  *United States v. Lain*, 773 F. App'x 476, 477 (10th Cir. 2019); *see* ROA.57-58.

The amended complaint, furthermore, is devoid of the "factual enhancement" to support an allegation that DeWilde suffered an injury in his capacity as a trustee. *Iqbal*, 556 U.S. at 678.  It leaves the court to speculate about the nature of the trust, the purpose of the trust, the terms of the trust instrument, the number of trustees, and the restrictions on trustees.  *See id.*  DeWilde argues (at 5-6) that such allegations are not necessary because a trust is only a "fiduciary relationship," and a trustee necessarily "holds [the firearm] for the benefit of the beneficiaries," citing *Hollis v. Lynch*, 827 F.3d 436, 443 (5th Cir. 2016) (quotation marks omitted).  But "[t]rusts are artificial entities that exist independently of their trustees," *In re Wilson*, 860 F. App'x 147, 150 (10th Cir. 2021) (citing *Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1176 (10th Cir. 2015)), and it remains unclear what injury DeWilde suffered in his capacity as a trustee.

There are many reasons why a person may place a firearm into trust, including to preserve the value of "expensive collector investments for inheritance," to maintain "items until [their] children are of legal age to possess the items," to "facilitat[e] the transfer of an . . . item to a decedent's heirs," and to "allow[] several individuals to

12

lawfully possess the same . . . item," and many reasons more why a trustee might want to assist that person by serving as a trustee over the asset.  *See Machineguns, Destructive Devices and Certain Other Firearms; Background Checks for Responsible Persons of a Trust or Legal Entity With Respect To Making or Transferring a Firearm*, 81 Fed. Reg. 2658, 2684-85 (Jan. 15, 2016).  In the absence of further details in the amended complaint, the district properly dismissed the suit for lack of standing.

That dismissal was especially appropriate here.  Having utilized a trust instrument, DeWilde cannot now revive such claims by recasting the injuries to the trust as injuries to him as an individual.  Because "[t]rusts are artificial entities that exist independently of their trustees," a trustee lacks standing when an "alleged injury falls on the separate entity, not [the trustee]."  *In re Wilson*, 860 F. App'x at 148; *see Conagra Foods,* 776 F.3d at 1176 (describing trusts as "artificial entities").  DeWilde's alleged inability to manage the trust's firearm "does not reflect any cognizable injury . . . that is distinct" from the harm to the trust, and so cannot show that he "personally has suffered a direct, nonderivative injury."  *Potthoff v. Morin*, 245 F.3d 710, 717-18 (8th Cir. 2001); *see Pagan v. Calderon*, 448 F.3d 16, 30 (1st Cir. 2006) (explaining that an agent for an artificial entity can assert a constitutional claim "only if he alleges that he personally suffered a direct, nonderivative injury.").[3]

---

[3] Contrary to DeWilde's argument (at 9), he does not have standing to assert injuries relating to the trust just because federal law authorizes *pro se* parties to "plead and conduct their own cases personally" under 28 U.S.C. § 1654.  That law gives a

*Continued on next page.*

## II.    18 U.S.C. § 922(o) complies with the Second Amendment.

If this Court reaches the merits, it should reject DeWilde's facial challenge to the federal machinegun ban. The courts of appeals have uniformly upheld 18 U.S.C. § 922(o) against Second Amendment challenges. *See, e.g.*, *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (unpublished); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 143-44 (3d Cir. 2016); *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016); *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). That result follows from controlling precedent as well as text, history, and tradition.

### A.    Supreme Court precedent forecloses DeWilde's challenge.

**1.** The Supreme Court has made clear that the Second Amendment does not extend to machineguns like M-16s. The Constitution protects an individual right to keep and bear arms, but "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Among other things, the right does not protect certain "types of weapons." *Id.* at 624. In *United States v. Miller*, 307 U.S. 174 (1939), *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the

---

right for parties to plead "their own cases"—not the cases of other entities. *Lain*, 773 F. App'x at 477. And that law does not confer an unbounded right for *pro se* parties to pursue litigation in the absence of a direct, personal, nonderivative injury in fact.

Court has recognized an established limitation on the right to keep and bear arms:

that the right extends only to weapons "in common use" among civilians, not

"weapons not typically possessed by law-abiding citizens for lawful purposes," like

"dangerous and unusual weapons," *Heller*, 554 U.S. at 625, 627.  The Court has

therefore explained that it would be "startling" to think that "the National Firearms

Act's restrictions on machineguns . . . might be unconstitutional," and has accepted as

uncontroversial that "M-16 rifles and the like—may be banned."  *Id.* at 624, 627.

  As other courts have recognized, the Supreme Court has therefore recognized

that there is no Second Amendment right to possess a machinegun like an M-16.  *See,*

*e.g.*, *Hollis*, 827 F.3d at 446 ("*Heller* took it as a given that M-16s are dangerous and

unusual weapons and not protected by the Second Amendment."); *Palmetto*, 822 F.3d

at 141 ("[*Heller*] discusses machine guns on several occasions, and each time suggests

that these weapons may be banned without burdening Second Amendment rights");

*Bevis v. City of Naperville*, No. 23-1353, 2023 WL 7273709, at *12 (7th Cir. Nov. 3, 2023)

("*Heller* itself stated that M16s are not among the Arms covered by the Second

Amendment."); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015)

("*Heller* deemed a ban on private possession of machine guns to be obviously valid.").

That limitation, repeatedly recognized in the Court's decisions, controls this case.

  This Court need go no further.  Where the limitations recognized by the

Supreme Court dictate the outcome of Second Amendment challenges to federal

firearms laws, this Court has ended the analysis there.  *See Vincent v. Garland*, 80 F.4th

1197, 1201 n.4 (10th Cir. 2023) (explaining that such limitations are dispositive "regardless of whether [the] language constituted dicta or part of the holding"). The Court, for example, has upheld the federal ban on the possession of firearms by felons, 18 U.S.C. § 922(g)(1), in all of its applications, based on language in *Heller* that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," 554 U.S. at 626; *see United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (upholding § 922(g)(1) pre-*Bruen*); *Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (upholding § 922(g)(1) post-*Bruen*). The same approach is warranted with respect to the federal machinegun ban here.

**2.** DeWilde's opening brief does not reference the Supreme Court's recognition that M-16 rifles "may be banned," *Heller*, 554 U.S. at 627, and offers no basis on which to ignore that limitation. DeWilde emphasizes (at 19) that the Court did not include the federal machinegun ban in a list of "longstanding prohibitions" when it specified that "nothing in our opinion should be taken to cast doubt" on those laws. *Heller*, 554 U.S. at 626-27. But immediately after the language that DeWilde invokes, the Court "recognize[d] another important limitation on the right to keep and carry arms": that the right excluded weapons not typically possessed by

16

law-abiding citizens for lawful purposes like "dangerous and unusual weapons." *Id.* at

627. The Court left no doubt that "M-16 rifles and the like—may be banned."[4] *Id.*

Contrary to DeWilde's contention (at 21-22), this Court cannot ignore these

limitations. Even assuming DeWilde is correct that these statements are dicta, they

remain instructions that the courts of appeals are meant to follow. The Supreme

Court is free to disregard its own "dictum," *see Heller*, 554 U.S. at 625 n.25, because

the Supreme Court may "overrule one of its precedents," *State Oil Co. v. Khan*, 522

U.S. 3, 20 (1997), and there, even horizontal stare decisis is not "an inexorable

command," *Ramos v. Louisiana*, 140 S. Ct. 1390, 1405 (2020). But in the courts of

appeals, "the Supreme Court's dicta is almost as influential . . . as its holdings," *United

States v. Nixon*, 919 F.3d 1265, 1273 (10th Cir. 2019), for the same reason that "rigid

adherence to vertical stare decisis is paramount": "[o]nly the Supreme Court can

overrule its . . . precedents," *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023).

The limitations recognized by the Supreme Court foreclose DeWilde's challenge to

the federal machinegun ban here.

---

[4] DeWilde also erroneously contends that some constitutional challenges may be permitted against the machinegun ban because other "longstanding prohibitions" on the possession of firearms like the federal felon-in-possession ban are only "presumptively lawful." Br. 20-21 (quoting *Heller*, 554 U.S. at 627 n.26). The "presumptively lawful" language does not qualify *Heller*'s discussion of the machinegun ban and has no bearing on DeWilde's facial challenge, which seeks to invalidate the machinegun ban in its entirety. In any event, the Court "presumed that the regulations are constitutional because they are constitutional, but termed the conclusion presumptive because the specific regulations were not at issue in *Heller*." *United States v. Jackson*, 69 F.4th 495, 505 n.3 (8th Cir. 2023).

17

**B.    The text, history, and tradition of the Second Amendment make clear that 18 U.S.C. § 922(o) is constitutional.**

Were this Court to undertake an independent inquiry into the constitutionality of 18 U.S.C. § 922(o), "the Second Amendment's text, as informed by history," and the "Nation's historical tradition of firearm regulation" support that the machinegun ban is permissible. *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126, 2127 (2022). As the Supreme Court has explained, the text, history, and tradition of the Second Amendment support that a government may ban the possession of "weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. The federal machinegun ban is consistent with that principle because it bans a firearm that is not typically possessed by law-abiding citizens for lawful purposes.

**1.** The text of the Second Amendment and its historical context support that firearms are unprotected arms if they are not typically possessed by law-abiding citizens for lawful purposes. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The text supports that "the way in which the Second Amendment's operative clause furthers the purpose announced in its preface" is precise: It protects only those weapons that "men were expected to . . . bear[]" when "called for [militia] service"—namely, "arms supplied by themselves" and "of the kind in common use," rather than "weapons not typically

18

possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 624-25; *see Bevis*, 2023 WL 7273709, at *11 ("We take from this that the definition of 'bearable Arms' extends only to weapons in common use for a lawful purpose.").

That principle conforms to the public understanding of the text at the time. Like the text of other amendments, the scope of the right of the people to keep and bear arms is "fixed according to its historical understanding." *Bruen*, 142 S. Ct. at 2132. That is because "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id.* at 2136 (quoting *Heller*, 554 U.S. at 634-35). As is well established, the "historical sources indicate that the Arms the Second Amendment is talking about are weapons in common use for self-defense." *Bevis*, 2023 WL 7273709, at *10. The public understood the Second Amendment not to protect certain "types of weapons." *Heller*, 554 U.S. at 624. In the "colonial and revolutionary war era," the weapons protected were just those "used in defense of person and home," *id.* at 624-25 (citing George C. Neumann, *Swords and Blades of the American Revolution* 6-15, 252-254 (1973)), which again, excluded weapons "not typically possessed by law-abiding citizens for lawful purposes," *id.*

**2. a.** The "historical tradition of firearm regulation" in the United States further supports that a government may ban the possession of firearms that are not typically possessed by law-abiding citizens for lawful purposes. *Bruen*, 142 S. Ct. at 2130. The government may justify a firearms law when "historical precedent" from "before, during, and even after the founding evinces a comparable tradition of

regulation," *id.* at 2131-32, based on "well-established and representative historical analogue[s]," *id.* at 2133. As established in *Heller* and reaffirmed in *Bruen*, there is a longstanding historical tradition in this country of banning "dangerous and unusual weapons." *Heller*, 554 U.S. at 627; *Bruen*, 142 S. Ct. at 2143. That tradition "fairly support[s]" bans on firearms not "in common use," meaning firearms "not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, 627.

**Pre-Founding**: Because the Second Amendment "codified a right inherited from our English ancestors," English legal tradition sheds light on our traditions. *Bruen*, 142 S. Ct. at 2127-28 (quoting *Heller*, 554 U.S. at 599). In 1328, the Statute of Northampton made the offense of "rid[ing]" or "go[ing] armed" punishable by forfeiture of the offender's "armour." 2 Edw. 3, c. 3 (1328) (Eng.); *see Bruen*, 142 S. Ct. at 2139-2142. This statute was understood by commentators to provide that "[t]he offence of riding or going armed, with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land." 4 William Blackstone, *Commentaries on the Laws of England* 148-49 (10th ed. 1787). In this way, the statute was consistent with the common law offense of "affray," which included cases "where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." 1 Richard Burn, *The Justice of the Peace, and Parish Officer* 13-14 (2d ed. 1756); 1 William Hawkins, *A Treatise of the Pleas of the Crown* 135 (1716). The statute passed to the colonies, *Patterson v. Winn*, 30 U.S. (5 Pet.) 233, 241 (1831), and served as a model for later regulation, *see Bruen*, 142 S. Ct. at 2143.

20

**Founding**: The colonies likewise "prohibited the carrying of 'dangerous and unusual weapons.'" *Bruen*, 142 S. Ct. at 2143; *see Heller*, 554 U.S. at 627. The province of East New Jersey (1686) prohibited the concealed carry of "unusual and unlawful weapons."[5] More generally, early American justice-of-the-peace manuals empowered justices to confiscate the arms of a person who "arm[ed] himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people."[6] Recodifying this authority, colonial Massachusetts (1692) and New Hampshire (1701) provided that justices of the peace could arrest "all affrayers, rioters, disturbers or breakers of the peace, and such as shall ride, or go armed offensively . . . by night or by day, in fear or affray of their majesties' liege people."[7] In the late-18th century, the state of Virginia (1786) similarly provided that no person shall "ride armed by night nor by day, . . . in terror of the Country,"[8] and the commonwealth of Massachusetts (1795) later again directed justices of the peace to arrest "all affrayers, rioters,

---

[5] An Act Against Wearing Swords, &c., ch. 9, *in* Aaron Leaming & Jacob Spicer, *Grants, Concessions, and Original Constitutions of the Province of New Jersey* 289-90 (2d ed. 1881).

[6] Joseph Greenleaf, *An Abridgment of Burn's Justice of the Peace and Parish Officer*, 12-13 (1773) (Mass.); William Waller Hening, *The New Virginia Justice* 18 (1795) (Va.); Eliphalet Ladd, *Burn's Abridgement, Or The American Justice* 22- 24 (2d ed. 1792) (N.H.); James Parker, *Conductor Generalis* 12 (1764) (N.J.); James Parker, *Conductor Generalis* 12 (Robert Hodge printing 1788) (N.Y.); James Parker, *Conductor Generalis* 11 (Robert Campbell printing 1792) (Pa.).

[7] *See* Act of Nov. 1, 1692, ch. 18, § 6, *in* 1 *Acts and Resolves of the Province of Massachusetts Bay* 52-53 (1869); Act of June 14, 1701, ch. 7, *in* 1 *Laws of New Hampshire 679* (Albert Stillman Batchellor ed., 1904).

[8] Act of Nov. 27, 1786, ch. 21, *in A Collection of all such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as are now in Force* 33 (1794).

disturbers, or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth."[9]  Although these statutes contemplated that an affray required "something more" than merely carrying any firearm in public, *Bruen*, S. Ct. at 2145, they contemplated that it would naturally constitute affray to carry dangerous and unusual weapons, *see id.* at 2143.

**Post-Founding**: Consistent with this tradition, States regularly banned various dangerous and unusual weapons through the antebellum period and during reconstruction.  States continued to punish affray under the common law understanding that "[r]iding or going armed with dangerous or unusual weapons, is a crime against the public peace, by terrifying the people of the land."  Charles Humphreys, *A Compendium of the Common Law in Force in Kentucky* 482 (1822); John A. Dunlap, *The New-York Justice* 8 (1815) (reiterating that "at common law, for a man to arm himself with dangerous and unusual weapons, in such manner as will naturally cause terror to the people" was affray); *see Heller*, 554 U.S. at 627 (collecting sources).[10]

And at a time when a firearm typically could not fire more than a single shot, States banned other dangerous and unusual weapons not designed for lawful use.

---

[9] Act of Jan. 29, 1795, ch. 2, 1795 Mass. Acts 436.

[10] 3 Bird Wilson, *The Works of the Honourable James Wilson* 79 (1804); 1 William Oldnall Russell, *A Treatise on Crimes and Indictable Misdemeanors* 271-72 (1831); Henry J. Stephen, *Summary of the Criminal Law* 48 (1840); Ellis Lewis, *An Abridgment of the Criminal Law of the United States* 64 (1847); Francis Wharton, *A Treatise on the Criminal Law of the United States* 726 (1852); *State v. Langford*, 10 N.C. 381, 383-84 (1824); *O'Neill v. State*, 16 Ala. 65, 67 (1849); *English v. State*, 35 Tex. 473, 476 (1871); *State v. Lanier*, 71 N.C. 288, 289 (1874).

States banned certain knives—most notably, the bowie knife, a knife with a distinctive hand guard that had a large fixed blade that was sharp on one side. Robert J. Spitzer, *Understanding Gun Law History after Bruen: Moving Forward by Looking Back*, 51 Fordham Urb. L.J. 58, 88-94 (2023). Georgia (1837) provided that no one shall "keep, or have about or on their person or elsewhere . . . Bowie, or any other kind of knives,"[11] and others banned the possession,[12] sale,[13] carry,[14] or concealed carry[15] of like knives.

---

[11] Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90.

[12] Possession: *See, e.g.*, Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90 ("Bowie, or any other kinds of knives"); Act of May 14, 1917, ch. 145, § 2, 1917 Cal. Stat. 221 ("dirk or dagger"); Act of Feb. 6, 1841, ch. 1, § 1, 1841 Miss. Laws 52 (imposing tax on private possession of "Bowie Knife" of $1 per knife); Act of Feb. 19, 1867, No. 259, ch. 2, § 10, 1867 Ala. Laws 263 (imposing tax on private possession of "all bowie knives, or knives of like description" of $3 per knife); Act of Mar. 31, 1874, ch. 239, § 6, 1874 Va. Laws 282 (imposing tax on private property based in part on the "aggregate value of . . . bowie-knives, dirks, and all weapons of a similar kind").

[13] Sale: *See, e.g.*, Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90 ("Bowie, or any other kinds of knives"); Act of Jan. 27, 1838, ch. 137, § 1, 1838 Tenn. Pub. Acts 200 ("Bowie knife or knives, or Arkansas tooth picks"); Act of Apr. 1, 1881, ch. 96, § 3, 1881 Ark. Acts 191-92 ("dirk or bowie knife"); Act of Nov. 23, 1907, No. 55, § 1, 1907 Ala. Laws 80 ("dirks . . . bowie knives or knife of like kind"); Act of Apr. 19, 1913, ch. 297, § 2, 1913 Iowa Acts 307-08 ("dirk, dagger, stiletto"); Act of May 14, 1917, ch. 145, § 1, 1917 Cal. Stat. 221 ("dirk or dagger"); *see* Act of June 30, 1837, No. 11, § 2, 1837 Ala. Laws 7 (imposing $100 tax on the transfer or sale of certain knives); Act of Feb. 10, 1838, No. 24, § 1, 1838 Fla. No. 24, § 1 (requiring payment of $200 tax per year to sell certain knives).

[14] Carry: *See, e.g.*, Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90 ("Bowie, or any other kinds of knives"); Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Laws 129 ("dirk . . . bowie knife, dagger"); Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25 ("dirk, dagger . . . bowie knife"); Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57 ("dirk, butcher or bowie knife"); Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts 191-92 ("dirk or bowie knife"); Act of Mar. 29, 1882, ch. 135, § 1, 1882 W. Va. Acts 421 ("dirk, bowie knife, razor"); Act of Mar. 18, 1889, No. 13, § 1, 1889 Ariz. Laws 30-31 ("dirk, dagger . . . bowie knife"); 1890 Okla. Laws 495 ("bowie knife, dirk knife"); Act

*Continued on next page.*

of Nov. 23, 1907, No. 55, § 2, 1907 Ala. Laws 80 ("dirks . . . bowie knives"); Act of Apr. 16, 1915, Act 103, § 1, 1915 Haw. Laws 121 ("bowie-knife"); Act of May 14, 1917, ch. 145, § 2, 1917 Cal. Stat. 221 ("dirk or dagger"); *see also* Act of Feb. 2, 1857, ch. 34, § 23(4), 1856 N.C. Laws 34 (imposing tax on possession of $1.25 per "bowie-knife . . . used, worn or carried about the person of the owner" in the past year).

    [15] <u>Concealed Carry</u>: *See, e.g.*, Act of Jan. 27, 1838, ch. 137, § 2, 1838 Tenn. Pub. Acts 200-01 ("Bowie knife or Arkansas tooth pick"); Act of Feb. 2, 1838, ch. 101, § 1, 1838 Va. Acts 76 ("dirk, bowie knife, or any other weapon of the like kind"); Act of Jan. 6, 1841, Penal Code, ch. 7, § 4, 1840 Ala. Laws 148-49 ("bowie knife, or knife or instrument of the like kind or description"); Act of Mar. 14, 1855, No. 120, § 115, 1855 La. Acts 148 ("bowie knife, dirk, or any other dangerous weapon"); Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Acts 129 ("dirk . . . bowie-knife, dagger"); Act of Mar. 18, 1859, § 1, 1859 Ohio Laws 56-57 ("bowie knife, dirk, or any other dangerous weapon"); Act of Mar. 1, 1864, ch. 128, § 1, 1864 Cal. Stat. 115 ("dirk . . . or other dangerous or deadly weapon"); Act of Feb. 15, 1872, ch. 7, § 1, 1872 Wis. Laws 17 ("dirk, dagger, sword"); Act of Mar. 4, 1873, ch. 58, pt. 1, ch. 4, § 25, 1873 Neb. Laws 724 ("bowie-knife, dirk, or any other dangerous weapon"); Act of Dec. 27, 1873, ch. 226, § 168, 1873 W. Va. Acts 709 ("dirks, bowie-knives . . . or other dangerous weapons"); Act of Feb. 28, 1878, ch. 46, §1, 1878 Miss. Laws 175 ("bowie knife . . . or other deadly weapon of like kind or description"); Act of Mar. 5, 1879, ch. 127, § 1, 1879 N.C. Laws 231 ("bowie knife, dirk, dagger"); Act of May 24, 1879, §1, 1879 Ill. Laws 114–15 ("knife"); Act of Dec. 24, 1880, No. 362, § 1, 1880 S.C. Acts 447–48 ("dirk, dagger . . . razors, or other similar deadly weapon usually used for the infliction of personal injury"); Act of Feb. 1, 1881, § 1, 1881 Colo. Laws 74 ("bowie knife, dagger"); Act of April 16, 1881, § 4, 1881 Ill. Laws 74 ("bowie knife, dirk" or "razor"); Act of Mar. 6, 1882, ch. 219, § 1, 1881 Va. Acts 233 ("dirk, bowie-knife, or any weapon of the like kind"); Act of Feb. 22, 1884, ch. 143, § 1, 1884 Va. Acts 180 ("dirk, bowie-knife, razor, . . . or any weapon of the like kind"); Act of Feb. 18, 1885, § 1, 1885 Or. Laws 33 ("knife (other than an ordinary pocket-knife), or any dirk or dagger"); Act of Apr. 7, 1886, ch. 375, § 1, 1886 Md. Laws 602 ("dirk-knife, bowie-knife . . . razor or any other dangerous or deadly weapon of any kind whatsoever, (penknives excepted)"); Act of May 31, 1887, No. 129, §1, 1887 Mich. Pub. Acts 144 ("dirk, dagger, sword . . . stiletto . . . razor"); An Act to Establish a Penal Code, § 662, 1887 Ariz. Laws 726 ("dirk, dirk-knife, bowie-knife"); Act of Mar. 6, 1891, No. 2, § 1, 1893 Ariz. Laws 3 ("dirk, dagger . . . bowie knife or any kind of knife or weapon except a pocket-knife"); Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231–32 ("dirk, bowie knife, butcher knife, dagger, razor"); Act of June 2, 1893, ch. 4124, § 1, 1893 Fla. Laws 52 ("dirk"); Act of Apr. 18, 1905, ch. 172, § 1, 1905 N.J. Laws 324 ("stiletto, dagger or razor or any knife with a blade five inches in length"); Act of Mar.

*Continued on next page.*

24

States also banned blunt weapons like "slung shots," brass knuckles, and billy clubs. The "slung shot," for example, was "a hand-held weapon for striking that has a piece of metal or stone at one end attached to a flexible strap or handle." Spitzer, *Understanding Gun Law History after Bruen*, *supra*, at 95-98. Because it was associated with crime, New York (1849) made it a felony to "be found in the possession of . . . any instrument or weapon of the kind usually known as a slung shot." *See* Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404. States banned the possession,[16] sale,[17] carry,[18] and concealed carry[19] of other similar melee weapons as well.

---

17, 1909, ch. 17, § 1, 1909 N.J. Laws 34–35 ("stiletto, dagger or razor or any knife with a blade five inches in length or over"); Act of Mar. 15, 1915, ch. 83, § 1, 1915 N.D. Laws 96 ("any sharp or dangerous weapon").

[16] <u>Possession</u>: *See, e.g.*, Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404 ("slung shot"); Act of Nov. 12, 1849, No. 36, § 2, 1849 Vt. Acts 26 ("slung shot"); Act of Apr. 16, 1881, §1, 1881 Ill. Laws 73 ("slung-shot or metallic knuckles, or other deadly weapon of like character"); Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442 ("blackjack, slungshot, billy, sandclub, sandbag, metal knuckles or bludgeon"); Act of Feb. 26, 1915, No. 205, § 1, 1915 Vt. Laws 344 ("slungshot, black jack, brass knuckles, or similar weapon"); Act of May 4, 1917, ch. 145, § 2, 1917 Cal. Stat. 221 ("blackjack, slungshot, billy, sandclub, sandbag, bludgeon, metal knuckles"); Act of June 2, 1927, § 3, 1927 Mich. Laws 888 ("blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag, or bludgeon").

[17] <u>Sale</u>: *See, e.g.*, Act of Apr. 7, 1849, ch. 278, § 1, 1849 N.Y. Laws 403 ("slung shot"); Act of Nov. 12, 1849, No. 36, § 1, 1849 Vt. Acts 26 ("slung shot"); Act of Aug. 6, 1868, No. 13, ch. 7, § 11, 1868 Fla. Laws 95 ("slung shot, or metallic knuckles"); Act of Apr. 1, 1881, ch. 96, § 3, 1881 Ark. Laws 192 ("brass or metal knucks"); Act of Apr. 16, 1881, §1, 1881 Ill. Laws 73-74 ("slung-shot or metallic knuckles, or other deadly weapon of like character"); Act of June 2, 1893, ch. 4124, § 3, 1893 Fla. Laws 52 ("slung shot, or metallic knuckles"); Act of Nov. 23, 1907, No. 55, § 1, 1907 Ala. Laws 80 ("brass knucks, metallic knucks . . . slung shot"); Act of May 18, 1911, H.B. No. 320, § 1, 1911 Ohio Laws 124; ("brass knuckles, billy, slung-shot, sand-bag, black-jack"); Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442

*Continued on next page.*

25

("blackjack, slungshot, billy, sandclub, sandbag, metal knuckles or bludgeon"); Act of Mar. 28, 1912, ch. 225, § 2, 1912 N.J. Laws 365 ("blackjack, slungshot, billy, sandclub, sand-bag, bludgeon, or metal knuckles"); Act of Apr. 19, 1913, ch. 297, § 2, 1913 Iowa Acts 307 ("metallic knuckles, sand bag or skull cracker"); Act of Feb. 26, 1915, No. 205, § 2, 1915 Vt. Laws 344 ("slungshot, black jack, brass knuckles, or similar weapon"); Act of April 14, 1917, ch. 243, § 1, 1917 Minn. Laws 354 ("slung-shot, sand-club, or metal knuckles"); Act of May 4, 1917, ch. 145, § 1, 1917 Cal. Stat. 221 ("blackjack, slungshot, billy, sandclub, sandbag, bludgeon, or metal knuckles"); Act of June 2, 1927, No. 372, § 3, 1927 Mich. Laws 888 ("blackjack, slung shot, billy, metallic knuckles, sandclub, sandbag, or bludgeon").

[18] <u>Carry</u>: *See, e.g.*, Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 403 ("slung shot"); Act of Nov. 12, 1849, No. 36, § 2, 1849 Vt. Acts 26 ("slung shot"); Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25 ("slung shot . . . brass knuckles"); Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57 ("brass or metal knucks"); Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts 191-92 ("brass or metal knucks"); Act of Mar. 24, 1882, ch. 135, § 1, 1882 W. Va. Acts 421 ("slung shot, billy, metallic or other false knucks"); Act of Mar. 13, 1889, No. 13, § 1, 1889 Ariz. Laws 30-31 ("slung shot . . . brass knuckles"); 1890 Okla. Laws 495 ("billy, metal knuckles"); Act of Nov. 23, 1907, No. 55, § 2, 1907 Ala. Laws 80 ("brass knucks, metallic knucks . . . slung shot"); Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442 ("blackjack, slungshot, billy, sandclub, sandbag, metal knuckles or bludgeon"); Act of Apr. 16, 1915, Act 103, § 1, 1915 Haw. Laws 121 ("slung-shot").

[19] <u>Concealed Carry</u>: *See, e.g.*, Act of Mar. 1, 1864, ch. 128, § 1, 1864 Cal. Stat. 115 ("slungshot"); Act of Feb. 14, 1872, ch. 7, § 1, 1872 Wis. Laws 17 ("slung-shot, brass knuckles"); Act of Apr. 8, 1873, No. 87, § 1, 1873 Ala. Laws 130 ("brass knuckles, slungshot"); Act of Feb. 28, 1878, ch. 46, § 1, 1878 Miss. Laws 175 ("brass knuckles, slung shot"); Act of Mar. 5, 1879, ch. 127, § 1, 1879 N.C. Laws 231 ("slung-shot, brass, iron or metallic knuckles"); Act of May 24, 1879, § 1, 1879 Ill. Laws 114–15 ("slungshot, brass, steel or iron knuckles"); Act of Dec. 24, 1880, No. 362, § 1, 1880 S.C. Acts 447–48 ("slung shot, metal knuckles"); Act of April 16, 1881, § 4, 1881 Ill. Laws 74 ("slung-shot or metallic knuckles"); Act of Feb. 22, 1884, ch. 143, § 1, 1884 Va. Acts 180 ("slung-shot"); Act of Feb. 18, 1885, § 1, 1885 Or. Laws 33 ("slungshot or metal knuckles"); Act of Apr. 7, 1886, § 1, 1886 Md. Laws 602 ("slung-shot, billy, sand-club, metal knuckles"); Act of May 31, 1887, No. 129, §1, 1887 Mich. Pub. Acts 144 ("metallic knuckles, pocket-billie, sand-bag, skull-cracker, slung-shot"); An Act to Establish a Penal Code, § 662, 1887 Ariz. Laws 726 ("slung-shot, brass knuckles"); Act of Mar. 6, 1891, No. 2, § 1, 1893 Ariz. Laws 3 ("slung-shot . . . brass knuckles, or other knuckles of metal"); Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231–32 ("billy, brass or metal knuckles, slung shot"); Act of Mar. 17, 1909,

*Continued on next page.*

26

As firearms became more capable, States banned firearms as dangerous and unusual weapons too.  Consistent with a colonial New Jersey (1771) statute that made it a crime to "set any loaded Gun . . . intended to go off or discharge itself, or be discharged by any String, Rope, or other Contrivance,"[20] various States criminalized the "setting of a so-called trap or spring gun, rifle, or other deadly weapon."[21]  As single-shot pistols became multi-shot handguns, and silencers came into use, States

---

ch. 17, § 1, 1909 N.J. Laws 34–35 ("bludgeon, blackjack, knuckles, sand-bag, slung-shot"); Act of Mar. 15, 1915, ch. 83, § 1, 1915 N.D. Laws 96 ("black-jack, sling-shot, billy, sand club, sand bag, bludgeon, metal knuckles").

[20] Act of December 21, 1771, ch. 539, § 10, 1771 N.J. Laws 346.

[21] <u>Trap Guns</u>: *See, e.g.*, Act of Mar. 6, 1852, § 103, 1851 Utah Laws 137 ("set[ting] any gun"); Act of Feb. 25, 1869, ch. 33, § 1, 1869 Wis. Laws 35 ("set[ting] any gun, pistol or revolver"); Act of Feb. 27, 1869, ch. 39, § 1, 1869 Minn. Laws 50-51 ("setting of a so-called trap or spring gun, pistol, rifle, or other deadly weapon"); Act of Apr. 22, 1875, No. 97, § 1, 1875 Mich. Pub. Acts 136 ("set[ting] any spring or other gun, or any trap or device"); Act of Nov. 25, 1884, No. 76, § 1, 1884 Vt. Acts. 74-75 ("set[ting] a spring gun trap"); Penal Code, § 7094, 1895 N.D. Rev. Codes 1259 ("set[ting] any spring or other gun or trap or device"); Act of Mar. 8, 1909, ch. 240, § 22, 1909 S.D. Laws 450 ("possession" of "set gun"); Act of Mar. 22, 1909, ch. 249, § 266, 1909 Wash. Laws 973 ("set[ting] a so-called trap, spring pistol, rifle, or other deadly weapon"); Act of Feb. 14, 1913, No. 201, § 16, 1912 Vt. Acts 260-61 ("set[ting] or us[ing] any device, the object of which is to discharge a fire arm"); Act of Apr. 1, 1913, ch. 186, § 1, 1913 N.J. Laws 339 ("possession" of "air gun" or "spring gun"); Act of Apr. 21, 1915, ch. 133, § 17, 1915 N.H. Laws 180-81 ("set[ting] or us[ing] at any time any device, the object of which is to discharge a firearm"); Act of July 7, 1921, ch. 530, § 1, 1921 Wis. Laws 870 ("set[ting] any . . . spring gun"); Act of Feb. 11, 1925, ch. 31, § 1, 1925 Or. Laws 42 ("set[ting] any loaded spring-gun or set-gun"); Act of Feb. 25, 1931, No. 58, § 1, 1931 S.C. Acts 78 ("construct[ing] set[ting], or plac[ing] a loaded trap gun, spring gun, or any like device"); Act of June 16, 1931, No. 328, § 236, 1931 Mich. Pub. Acts 671 ("set[ting] any spring or other gun"); *see* Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442 (prohibiting sale of "airgun" or "spring-gun").

27

banned silencers as well.[22]  *See* Spitzer, *Understanding Gun Law History after Bruen*, *supra*, at 72-82; Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers*, 83 Law & Contemp. Probs. 231, 245-49 (2020).

Indeed, when machineguns became a "general societal problem" after World War I, many States banned them quickly without genuine "disputes regarding the lawfulness of such prohibitions."  *Bruen*, 142 S. Ct. at 2131, 2133.  As explained, the machinegun migrated from the battlefield to the civilian market following the war, and immediately caused a national crisis as criminals overpowered law enforcement officials with firearms like the Thompson submachine gun (or "Tommy Gun").

---

[22] Silencers: *See, e.g.*, Act of Mar. 24, 1909, ch. 129, § 1, 1909 Me. Laws 141-42 ("firearm, fitted or contrived with any device for deadening the sound of explosion"); Act of Nov. 14, 1912, No. 237, § 1, 1912 Vt. Acts 310 ("gunsilencer"); Act of Mar. 13, 1913, ch. 64, § 1, 1913 Minn. Laws 55 ("silencer"); Act of Apr. 16, 1926, ch. 261, 1926 Mass. Acts 256 ("gunsilencer"); Act of Apr. 27, 1927, ch. 1052, § 8, 1927 R.I. Pub. Laws 259 ("muffler, silencer, or device for deadening or muffling"); Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888 ("muffler, silencer or device for deadening or muffling the sound of a discharged firearm"); Act of Jan. 9, 1934, Act 36, § 7, 1933 Haw. Laws 38-39 ("silencers"); *see* Act of Apr. 6, 1916, ch. 137, § 1, 1916 N.Y. Laws 338-39 (prohibiting sale of "appliance for causing the firing . . . to be silent or intended to lessen or muffle the noise of the firing of any gun"); *see also* Act of Apr. 7, 1911, ch. 128, § 1, 1911 N.J. Laws 185 (prohibiting use of silencer "when hunting for game or fowl"); Act of July 3, 1918, No. 88, § 3, 1918 La. Acts 131 (prohibiting use of silencer to "hunt, or kill wild deer"); Act of Feb. 18, 1921, ch. 83, § 97, 1921 Wyo. Sess. Laws 112-13 (prohibiting possession of silencer "while out for the purpose of hunting"); Act of May 24, 1923, No. 228, Art. VII, § 704(a), 1923 Pa. Laws 386 (prohibiting use of silencer to "hunt"); Act of Mar. 7, 1925, ch. 460, § 4, 1925 N.C. Laws 530 (prohibiting use of silencer while "hunting"); Act of Mar. 29, 1927, ch. 169, 1927 Del. Laws 516 (prohibiting use of silencer "when hunting for game or fowl"); Act of Mar. 18, 1929, ch. 84, § 14, 1929 Ariz. Laws 247 (prohibiting possession of silencer while "hunting wild animals or birds").

*See* John Ellis, *The Social History of the Machine Gun* 149-77 (1986). Shortly thereafter, States across the nation passed anti-machinegun laws, including bans.[23]

*See* Robert J. Spitzer, *Understanding Gun Law History after Bruen*, *supra*, at 61-67 (2023); Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs 55, 67-68 (2017). This wealth of historical evidence supports that from the colonial era to today, the United States has consistently banned weapons that are not typically possessed by law-abiding citizens for lawful purposes.

**2. b.** Against this historical evidence, DeWilde argues (at 23) that such history only reflects restrictions "on the manner in which arms may be carried." In support of this claim, DeWilde relies on a sentence in *Bruen* where the Court explained that the affray statutes like the Statute of Northampton did not "ban[] the carrying of any class

---

[23] <u>Machineguns</u>: Act of June 5, 1925, ch. 3, 1925 W. Va. Acts 24-32; Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938; Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws 181; Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts 469; Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201; Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws 257; Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts 413-14; Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888-89; Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157; Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777; Act of Apr. 29, 1929, ch. 190, § 1, 1929 Neb. Laws 674; Act of June 1, 1929, H.R. 498, § 1, 1929 Mo. Laws 170; Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws 813; Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws 306; Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws 1033; Act of July 2, 1931, § 2, 1931 Ill. Laws 452; Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 337; Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws 245; Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335; Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws 489; Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws 189; Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233; Act of Apr. 27, 1933, No. 120, § 2, 1933 Haw. Laws 117; Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219; Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76; Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts 1288; Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts 137.

of firearms" and instead "codified the existing common-law offense of bearing arms to terrorize the people." *Bruen*, 142 S. Ct. at 2143. That observation simply explained that early statutes did not "ban[] the public carry of all firearms," in a case that addressed the question whether there was any right to publicly carry a firearm at all. *Id.* Immediately thereafter, the Supreme Court made clear that the statutes supported the understanding that "colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons,'" citing the relevant passage from *Heller*. *Id.* *Heller*, in turn, made clear that "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" "fairly support[s]" a tradition of bans on firearms not "in common use," meaning firearms "not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, 627; *see id.* at 625 (explaining that the limitation "accords with the historical understanding of the scope of the right").

In any event, even if some statutes only restricted the manner of carrying firearms, DeWilde does not explain why those statutes would not support a tradition of prohibitions on the possession of weapons not typically possessed by law-abiding citizens for lawful purposes. "[A]nalogical reasoning under the Second Amendment" is not a "regulatory straightjacket," and there is no need to identify a "historical twin." *Bruen*, 142 S. Ct. at 2133. There is no reason why restrictions on the manner of carrying firearms for unlawful purposes—*i.e.*, to terrorize the people—cannot fairly support prohibitions on the possession of firearms not typically possessed for lawful

purposes—*i.e.*, "dangerous and unusual" firearms that would "naturally" terrorize the people, 1 Richard Burn, *The Justice of the Peace, and Parish Officer* 13-14 (2d ed. 1756).

**3. a.** The federal machinegun ban is consistent with the longstanding historical tradition in the United States where governments ban firearms that are not typically possessed by law-abiding citizens for lawful purposes. As a matter of "analogical reasoning," *Bruen*, 142 S. Ct. at 2133, the historical evidence reflects that governments had the established authority to prohibit such weapons. As explained, the machinegun ban falls within this tradition because it shares the "how and why" of these laws: It bans weapons (the how) that have been determined not to be typically possessed by law-abiding citizens for lawful use (the why). *Id.* at 2133.

Machineguns are not typically possessed by law-abiding citizens for lawful purposes. As Congress has long determined, "there is no reason why anyone except a law officer should have a machine gun." S. Rep. No. 73-1444, at 2 (1934). The machinegun ban is "designed to deal with crime guns." 132 Cong. Rec. 9600 (1986) (Sen. Hatch). Machineguns are used by "law violator[s]," S. Rep. No. 73-1444, at 1 (1934); they are "used readily and efficiently by criminals or gangsters," H.R. Rep. No. 83-1337, at A395 (1954); they are "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime," H.R. Rep. No. 99-495, at 4 (1986); and their "proliferation" undermines "protection of law enforcement officers," *id.* at 7. Given that, the Supreme Court has described them as "quasi-suspect" weapons, *Staples v. United States*, 511 U.S. 600, 611-12 (1994), "likely to

31

be used for criminal purposes," *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality).  As such, they are banned or regulated under federal law for private persons, *see* 26 U.S.C. § 5845(a)-(b), and 35 states and the District of Columbia have banned them for private persons as well.[24]

That machineguns are a "law violator['s] . . . most dangerous weapon" further supports that they are not protected.  S. Rep. No. 73-1444, at 1 (1934).  "The immense danger posed by machineguns" is clear.  *United States v. O'Brien*, 560 U.S. 218, 230 (2010).  As automatic weapons, they can "fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds."  *Henry*, 688 F.3d at 640.  This "heightened capability to cause damage" supports that they are not possessed for lawful use.  *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018).

---

[24] *See* Alaska Stat. § 11.61.200; Ariz. Rev. Stat. Ann. §§ 13-3101, 13-3102; Cal. Penal Code § 32625; Colo. Rev. Stat. § 18-12-102; Del. Code tit. 11, § 1444; D.C. Code § 22-4514; Fla. Stat. § 790.221; Ga. Code Ann. § 16-11-122; Haw. Rev. Stat. § 134-8; 720 Ill. Comp. Stat. 5/24-1; Ind. Code § 35-47-5-8; Iowa Code §§ 724.1, 724.3; Kan. Stat. Ann. § 21-6301; La. Stat. Ann. § 40:1752; Me. Rev. Stat. Ann. tit. 17-A, § 1051; Mass. Gen. Laws ch. 140, §§ 128, 131, 131M; Mich. Comp. Laws § 750.224; Minn. Stat. § 609.67; Mo. Ann. Stat. § 571.020; Neb. Rev. Stat. § 28-1203; Nev. Rev. Stat. § 202.350; N.J. Stat. Ann. §§ 2C:39-5, 2C:58-5; N.Y. Penal Law § 265.02; N.C. Gen. Stat. § 14-409; N.D. Cent. Code § 62.1-05-01; Ohio Rev. Code Ann. §§ 2923.11, 2923.17; Or. Rev. Stat. § 166.272; 18 Pa. Stat. § 908; 11 R.I. Gen. Laws § 11-47-8; S.C. Code Ann. § 16-23-230; S.D. Codified Laws §§ 22-1-2, 22-14-6; Tenn. Code Ann. § 39-17-1302; Tex. Penal Code Ann. § 46.05; Wash. Rev. Code § 9.41.190; W. Va. Code § 61-7-9; Wis. Stat. § 941.26.  Some, but not all, of these state laws have exceptions or affirmative defenses for machineguns possessed in compliance with federal law. *See, e.g.*, Ga. Code Ann. § 16-11-122; La. Stat. § 40:1752; Me. Rev. Stat. Ann. tit. 17-A, § 1052; Mo. Ann. Stat. § 571.020(1)(6); Or. Rev. Stat. § 166.272(4).

And the actual possession of machineguns by private civilians confirms that they are not typically possessed for lawful use.  Out of the hundreds of millions of firearms in the United States, *see, e.g.*, William J. Krouse, Cong. Research Serv., *Gun Control Legislation* 8 (2012), there are only 741,146 registered machineguns, *see* ATF, Firearms Commerce in the United States: Annual Statistical Update 2021, at 15-16.[25] When machineguns involving the government are excluded, *see* 18 U.S.C. § 922(o)(2)(A), the number is no greater than 175,977, *see* ROA.167; *Hollis*, 827 F.3d at 449.  With the ban on new machineguns, that number can only decrease over time.  Already far less than one percent of all firearms, there can be no doubt that machineguns "are highly unusual in society at large," *Bruen*, 142 S. Ct. at 2143, and that it would be highly unusual to possess a machinegun for self-defense.

**3. b.**  In attempting to demonstrate that machineguns are typically possessed for lawful purposes, and therefore within the scope of the right to keep and bear arms as historically understood, DeWilde relies (at 19) on *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam), where the Court considered a ban on stun guns.  Contrary to DeWilde's assertion, that decision did not hold that stun guns were in common use; it remanded the case to the Supreme Judicial Court of Massachusetts to make that determination in the first instance.  *Id.* at 412.  And although Justice Alito thought it probative that at least 200,000 stun guns had been sold to private citizens, he

---

[25] Available at https://perma.cc/5FBE-2C9C.

determined that stun guns were constitutionally protected only because they were also "accepted as a legitimate means of self-defense across the country" and were lawful to possess in 45 states. *Id.* at 420 (Alito, J., concurring in the judgment). As explained, that is not true for machineguns, and all other relevant evidence suggests that they are not typically possessed by law-abiding citizens for lawful purposes.

## C.    DeWilde's arguments to the contrary lack merit.

**1.** In arguing that 18 U.S.C. § 922(o) is unconstitutional, DeWilde contends (at 12-13) that the district court did not adhere to the governing standard in *Bruen* because it analyzed the "plain text" of the Second Amendment using "historical authorities." Instead, DeWilde suggests, the district court should have assessed only whether machineguns were "instruments that constitute bearable arms." Br. 13. As explained, under *Bruen*, courts must assess whether a machinegun is a protected arm in light of the full text of the Amendment. *See supra* pps. 18-19. And history illuminates that meaning. As DeWilde acknowledges, an analysis of constitutional text often involves "historical analysis." Br. 13 (acknowledging that "both prongs invoke historical analysis"). And *Bruen* reaffirmed that the "examination of a variety of legal and other sources to determine the public understanding of a legal text" is "a critical tool of constitutional interpretation." *Bruen*, 142 S. Ct. at 2127-28. For that reason, *Bruen* confirmed that the weapons at issue in that case were "weapons 'in common use' today for self-defense" before further assessing "whether the plain text of the

34

Second Amendment protects [plaintiffs'] proposed course of conduct." *Id.* at 2134. The district court did the same.

In arguing otherwise, DeWilde invokes *Teter v. Lopez*, in which the Ninth Circuit rejected the argument that "the purported 'dangerous and unusual' nature of butterfly knives means that they are not 'arms' as that term is used in the Second Amendment." 76 F.4th 938, 949-50 (9th Cir. 2023). That decision reads the text too narrowly. *See supra* pps. 18-19; *Bevis*, 2023 WL 7273709, at *10-*11. But even *Teter* analyzed whether the weapons at issue in that case were "not typically possessed by law-abiding citizens for self-defense" before leaving an analysis of the text and beginning an analysis of the historical tradition of regulating weapons. *See* 76 F.4th at 950. That is no different from the analysis that the district court conducted below.

In any event, DeWilde's methodological objections have no consequence for this challenge. In this case, the text of the Second Amendment, the historical public understanding of the Second Amendment, and the Nation's tradition of firearms regulations all support that a government may ban firearms that are not typically possessed by law-abiding citizens for lawful purposes like self-defense. *See supra* pps. 18-34. It is thus unnecessary to decide the proper "step" to conduct such analysis.

**2.** DeWilde also briefly suggests (at 18) that the district court should have concluded that machineguns are typically possessed by law-abiding citizens for lawful purposes because "they are in common use in the military." That argument, however, misunderstands the relevant principle. The question whether a firearm is "typically

35

possessed by law-abiding citizens for lawful purposes" is an inquiry into whether a firearm is typically possessed by private citizens for private purposes like self-defense, as the right to keep and bear arms extends only to arms "men were expected to . . . suppl[y] by themselves," and "lawful weapons that they possessed at home." *Heller*, 554 U.S. at 624, 627. There is no suggestion in *Heller*, *Bruen*, or any other opinion that the issuance of a firearm to members of the military in active service counts for this inquiry, which concerns the constitutional rights of private people as individuals.

**3.** DeWilde lastly argues (at 16) that machineguns are categorically protected even if they are not typically possessed by law-abiding citizens for lawful purposes "because they are the standard-issue service weapon in the United States military." DeWilde suggests (at 15) that this follows from the text of the "prefatory clause" of the Amendment, which notes "[a] well regulated Militia'[s] . . . necess[ity] to the security of a free State." In doing so, DeWilde references (at 15) historical sources that understood the right as designed in part "to secure to the people the ability to oppose themselves in military force against the usurpations of government."

This argument lacks merit. As an initial matter, the argument appears to confuse the historical "militia"—the group of "all able-bodied men"—with the modern "military"—made up of members of the branches of the armed services. *See Heller*, 554 U.S. at 596; U.S. Const. art. I, § 8, cls. 15-16; U.S. Const. art. I, § 8, cls. 12-13. As historically understood, the general militia and standing armies were not the same.

36

Regardless, "no law pursues its purposes at all costs," *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023), and the Second Amendment is no different. As explained in *Heller*, "the way in which the Second Amendment's operative clause furthers the purpose announced in its preface" is that the Amendment protects private citizens' ability to possess firearms "in common use," and it does not protect their ability to possess firearms "not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 624-25. That is true even though it does not yield parity between the people and the government. The Second Amendment protects only "the sorts of lawful weapons that [people] possessed at home," even though "no amount of small arms could be useful against modern-day bombers and tanks." *Id.* at 627. Because machineguns are not typically possessed by private law-abiding citizens for private lawful purposes, they may be banned.

Indeed, that machineguns are "weapons that are most useful in military service" and law enforcement, *Heller*, 554 U.S. at 627, only underscores that they are not typically possessed by law-abiding citizens for lawful purposes. Like other machineguns, the M-16 was "originally designed for the U.S. military" and "originally manufactured almost exclusively for military use," *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652, 24655 (Apr. 26, 2022), and it is a standard-issue automatic firearm for the military. For this reason, Congress has long considered machineguns to be "primarily weapons of war." S. Rep. No. 90-1501, at 28 (1968); *see Hollis*, 827 F.3d at 448 (same). The machinegun ban itself recognizes

this status, as it exempts machineguns possessed or transferred by a federal authority like the United States military. *See* 18 U.S.C. § 922(o)(2)(A). That machineguns are primarily used by the military and law enforcement underscores that they are not typically used by private civilians.

In any event, as explained, DeWilde's argument lacks a reasonable limiting principle. DeWilde would read into the Second Amendment an unqualified right for civilians to possess any "bearable" military instrument. Pl.'s Br. 16. But civilians do not have a right to shoulder-mounted rocket-propelled grenade launchers, anti-tank weapons, guided missiles, or suitcase bombs. "[I]t is obvious that the Second Amendment does not protect the right to keep a nuclear weapon in one's basement, or a chemical or biological weapons in one's attic, or a tank in one's backyard." *Nordyke v. King*, 644 F.3d 776, 797 n.6 (9th Cir. 2011) (Gould, J., concurring in part and in the judgment); *see Bevis*, 2023 WL 7273709, at *1 ("[A] nuclear weapon . . . can be reserved for the military, even though it is light enough for one person to carry."). The same is true for machineguns, and that is enough to resolve this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

NICHOLAS VASSALLO
  *United States Attorney*

MICHAEL S. RAAB

  *s/ Ben Lewis*
BEN LEWIS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7250*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2494*
  *benjamin.r.lewis@usdoj.gov*

November 2023

39

## REQUEST FOR ORAL ARGUMENT

Appellee does not believe that oral argument would be of assistance to this Court, and does not request oral argument.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,228 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.



*s/ Ben Lewis*
Ben Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Ben Lewis*
Ben Lewis

**ADDENDUM**

## TABLE OF CONTENTS

18 U.S.C. § 922 .................................................................................................................. A1

**18 U.S.C. § 922**

**§ 922. Unlawful Acts**

. . .

(o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.